PEAVY-BYRNES LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 6903.

Circuit Court of Appeals, Fifth Circuit.

March 17, 1934.

S. L. Herold and John B. Files, both of Shreveport, La., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., John MacC. Hudson and Sewall Key, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and John E. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This court has written one opinion, the Board two, in this case. Peavy-Wilson Lumber Co. v. Commissioner of Internal Revenue, 51 F.(2d) 163; 14 B. T. A. 625; 25 B. T. A. 223. We refer to them for the facts. Only a brief summary of their effect will be necessary here. The arrangement entered into in November, 1909, and later resulting in the transfer of one-half of petitioner's capital stock, did exhibit some of the formal attributes of a sale. It was in fact, however, a mere working agreement, by which the timber of Krause & Managan Lumber Company, Limited, hereafter called Krause, was pooled with Peavy-Byrnes' milling and marketing facilities. The pooling agreement fixed a stumpage price to be increased under named contingencies, and provided that all of the profits from the operation should first go to petitioner, until its investment was paid back. Thereafter, subject to the stumpage payments, Krause and petitioner were to be equal owners in timber and mill and the operating profits. Krause, however, was given the further right at its option to exchange its one-half interest in the property and profits for one-half of the stock. We quote from our former opinion: "The Peavy-Byrnes Company complied with all its obligations. It had received by July 28, 1913, from net earnings an amount equal to its total investment * * * and on that date [Krause & Managan Company] exercised its option and received in exchange for its half interest in future earnings the stock of the Peavy-Byrnes Company to which it was entitled." 51 F.(2d) 163, at page 165. A controversy arising over its income return, the Commissioner fixed the value of the stock and the property exchanged for it at $125,000. Before the Board petitioner claimed as the value of the stock and the property exchanged for it July 28, 1913, at first $562,500, later, by amendment, $613,-750. Its proof more than sustained these figures. In addition there was evidence that the July 28, 1913, value of the timber was $6 per

thousand. The Board, however, finding that the sale had taken place in 1909, when the contract was first executed, rejected altogether the evidence of the values in 1913. Recognizing that, if Krause "had taken one half of the assets and then exchanged them for stock undoubtedly the value of these assets at the time paid in for stock should be included in invested capital, and the depletion allowance would be determinable on the basis of that transaction," it held that such transaction did not occur. It took the view that Krause parted with its timber rights in 1909; that it did not therefore reacquire them, and in 1913 it did not have any timber rights to exchange for stock. It definitely rejected the idea that the stock was paid for in 1913. 14 B. T. A. 650, 651. It therefore "for invested capital purposes" directed its inquiry to the value of the assets in 1909, for which the stock was issued in 1913. It found this value for use in the years 1918 to 1921 to be $319,330. It used this same value for 1917, adding to it a surplus of $69,930. For depletion purposes it fixed the fair market value of petitioner's timber as of March 1, 1913 at $421,350.

Because of the failure of the Board to accept July 28, 1913, as the date for fixing costs and values, we reversed its findings and determination and remanded the cause for further and not inconsistent proceedings. On the hearing following this reversal, petitioner amended to claim a value for the stock and for the assets exchanged for the stock of $1,250,000. In support of this value it offered the testimony of officers and directors of petitioner and of Krause-Managan that the whole value of the properties of which Krause was one-half owner was in July, 1913, when the half interest was exchanged for stock, from two and a half to three million dollars. It also offered testimony that the timber had a special value of $10 per thousand to it, because of being owned in connection with the mill, and it was further testified that the value of the whole property was greatly enhanced by the opportunity to obtain ample timber supplies adjacent to the mill at favorable prices. It called attention, too, to the fact that the seventh clause of the contract provided that all other timber purchased by either of the parties to it should be put into the venture at cost.

The Board this time tentatively valued the stock and the timber as of July, 1913. It then whittled both down by methods it deemed satisfactory, until it arrived at a sum representing at once the fair market value of the stock and the cost of the timber. This

714

conclusion, that the value of the stock for which the timber was exchanged, and the cost of the timber purchased with the stock was the same, was certainly logically, if not factually, a sound one. In doing this it fixed a tentative value on the timber of $6 per thousand on the stock of $266 per share, taking in each case the highest values advanced for either on the former trial. It rejected for both stock and timber the greatly advanced values testified to on this one. The values thus fixed were, however, only tentative. Under the influence of its former view that the matter must be looked at from the standpoint of the making of the contract in 1909, rather than of its outcome in 1913 when the purchase of the timber with the stock actually occurred, it diminished the tentative value it put on the stock of $665,000 by an unwarranted deduction on account of timber cut before 1913, finding as its final value $497,-135.92. As to the timber, by using the $6 base it fixed its value first at $546,815, and then by an arbitrary deduction brought it down to the final figure it had fixed for the stock. It reached these conclusions through an entire misapprehension of our opinion, and a sticking to its former error that the value of the stock must be determined as of the inception of the contract. It erroneously declared that we had rejected petitioner's theory that what occurred in July, 1913, was an exchange of Krause's one-half interest in the assets for one-half of the stock, when what we rejected was petitioner's claim that it was entitled to one-half of the profits, the fruits of its one-half ownership, in addition to one-half of the stock. We definitely said that it had exchanged the one for the other. We in effect found and held that what occurred on July 28, 1913, when Krause's one-half interest in the venture represented by his timber rights, was exchanged for one-half of petitioner's stock, was that petitioner then acquired the timber subject to the stumpage payments, by giving stock for it, and we sent the case back for the Board to determine and fix, as of that date, the value of the addition to petitioner's invested capital, and the cost of the timber it then acquired. It has failed to do this.

We agree with the Board's conclusion that the cost of the timber and the value of the stock ought to be and are the same. We agree, too, with its conclusion that a value for the stock of $665,000 as of that date is reasonable and supported by the evidence. We do not agree with its conclusion that any less than this amount fairly represents the then value of the stock, the then cost of the timber exchanged for it.

The order of the Board is therefore reversed, and the cause is remanded, with directions to redetermine petitioner's tax liability in accordance with its finding of $665,000 as the fair value of the stock, the cost of the timber, as of July 28, 1913, when the exchange was made.

Reversed and remanded, with directions.