## BROWN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6975.

Circuit Court of Appeals, Fifth Circuit.
March 22, 1934.
Rehearing Denied April 19, 1934.

L. J. Benckenstein, of Beaumont, Tex., and Walter A. Bolinger, of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Helen R. Carloss and Sewall Key, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and B. M. Coon, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

The taxpayer received in June, 1921, shares of corporate stock having a fair market value at that time of $116,800, which the Board of Tax Appeals held to be a taxable gain in that year. The ruling is complained of. The stock came to the taxpayer because of a contract made in 1917 by herself and others with one Wier, whereby the former parties agreed to the cutting and removal of merchantable timber on 86,000 acres of their land in Texas by Wier, who on his part was to erect and equip sawmills and to incorporate a company with $400,000 capital to take over the contract and the sawmills. The timber was to be cut at an average rate of 40,000,000 feet annually. For the timber cut $6 per thousand feet was to be paid each month, and in addition every six months 25 per cent. of the selling price of the lumber at the mill in excess of $13.50 per thousand feet. It was further provided that the corporation should pay out its net profits as cash dividends, and so soon as the earnings equaled the fixed investment of Wier and the other incorporators all the stock should be surrendered and one half of it be reissued to the surrendering stockholders and the other half divided among the timber owners. This taxpayer accordingly got each year her part of the fixed price of $6 per thousand feet of timber cut, and her part of the price of the lumber above $13.50 per thousand feet, and in June, 1921, her part of the accumulated profits of the corporation as represented in the redistribution of its stock. The standing timber which was acquired before March 1, 1913, was worth on that date $5.80 per thousand, so that the fixed price for it of $6 yielded a little gain on the timber cut, and the sharing in the profits of milling it were all gain if to be attributed only to the timber that had then been cut. The taxpayer, however, contends that the timber as a whole was exchanged for the stock, and that the value of the whole body of the timber must be returned before a gain on the stock is determined; and if this be not the case, that the gain represented by the stock did not accrue in 1921.

The contract says: "The parties of the first part, for the consideration and upon the terms and conditions hereinafter mentioned, by these presents do hereby give and grant unto the party of the second part the exclusive right to enter upon with teams, trams and in other proper ways, to turpentine and cut and remove all the merchantable pine timber measuring ten inches in diameter and upwards at the stump at the time of removal, on and from all lands" fully described. The $6 per thousand feet to be paid each month is expressed to be "for the timber cut the preceding month, and the 25% herein provided for (the profits over $13.50 per thousand feet of lumber) shall be determined and estimated at the end of each six months of operations." No special payments for the turpentining are provided. The legal effect of this grant depends upon its terms. Texas law is controlling. In Houston Oil Co. v. Hamilton, 109 Tex. 270, 206 S. W. 817, the instrument involved for a cash consideration bargained, sold, transferred, and delivered the standing merchantable pine timber on described land, to have and to hold it, with the right of way to go on and across the land for the purpose of removing it, forever. Ten years later the privies of the grantors began cutting the timber and the privies of the grantee were held to be the owners of the growing timber whose rights had not been forfeited by not removing it in a reasonable time. By contrast in the companion case of Houston Oil Co. v. Boykin, 109 Tex. 276, 206 S. W. 815, it was held that an instrument which for a cash consideration bargained and sold the merchantable timber standing and growing on land and provided that the vendee have liberty to go upon the land to cut and carry it away in such manner as should be convenient to him was not a perpetual grant of the trees but the implication was that they were to be removed within a reasonable time. This case fully asserts the rule that where a time is stipulated for the removal title passes only to such trees as are in fact removed within that time. In the present case the literal words are not a grant of the timber but of the exclusive right to go on the land and turpentine, cut, and remove the timber. Payment is to be made only for such timber as is cut. The contract does not expressly limit the time for which this right shall last except that the cutting must average 40,000,000 feet per year, but at the end of twelve years it is provided that under stated conditions the grantors may

themselves begin to cut and remove the remaining timber. Cancellation of the entire contract for defaults continuing thirty days after notice and for unexcused failure for six months to operate the sawmill is provided for. We are of opinion that the timber was not sold as a whole, that a sale of none of it occurred upon the execution of the contract, but that sales were accomplished only as the timber was cut and removed. Foster v. Commissioner (C. C. A.) 57 F.(2d) 516; Houston Oil Co. v. Boykin, supra. Therefore the money received under the contract was received for timber theretofore cut and not for that remaining to be cut. This is true, not only as to the $6 per thousand feet paid each month, but also as to the share of profits accruing each six months from its manufacture, and the share of profits accumulated by the corporation and realized by the timber owners in the issuance to them of stock in the corporation. The timber owners had from the beginning an inchoate half-interest in the profits of the corporation, but it was realizable only if and when the profits should in dividends redeem the capital investment. This happened in 1921. Thereupon the timber owners' half-interest in the accumulated profits was turned over to them in the shape of half the corporate stock. One-half of the profits to accrue in the future from manufacturing the remaining timber would come to them as future dividends on the stock. The remaining timber was in no wise represented in the distribution of stock made in 1921. No new or more absolute disposition of it was then made. The stock represented profits on the timber cut and thereby sold prior to June, 1921. The taxpayer's capital investment in that timber had been more than returned in the $6 per thousand feet paid for it, so that all else was gain. The gain represented by her share in the accumulating corporate net profits did not accrue to and was not taxably realized by her until the condition of full reimbursement of the investment of the old stockholders was fulfilled, and until she received some separate disposable thing which had a market value. The market value of the stock was realized income in 1921 and was then taxable. The capital invested in uncut timber is not to be compensated from it, for that timber was not yet sold.

The petition to revise the conclusion of the Board of Tax Appeals is therefore denied.

### On Motion for Rehearing.

Our opinion in this case is not in conflict with those in Peavy-Wilson Lumber Co. v. Commissioner (C. C. A.) 51 F.(2d) 163, and Peavy-Byrnes Lumber Co. v. Commissioner (C. C. A.) 69 F.(2d) 712. The question in the cited cases was as to the invested capital of the purchasers of timber and the date at which the investment was made and to be valued. It was held that the timber contract, somewhat similar to the one here involved, was not a purchase and sale of the standing timber at its date, but only on the date when the company's capital stock was issued for it, on the exercise of an option to that effect in the seller. In exercising the option the seller surrendered its right to profits under the timber cutting contract and became a stockholder. In the first opinion we said: "The Peavy-Byrnes Company did not become the owner of the timber until July 28, 1913, when it paid for it in stock. The Krause & Managan Company upon the exercise of its option to take the stock surrendered its interest in the contract, and thereafter became only a stockholder. * * * We are of opinion that the board erred in failing to accept July 28, 1913, as the date for ascertaining the value of the timber received by the Peavy-Byrnes Company in exchange for its capital stock." Peavy-Wilson Lumber Co. v. Com'r (C. C. A.) 51 F.(2d) 163, 165. In the present case we hold similarly that the timber contract was not originally a purchase and sale of the standing timber. But here the issuance of the corporate stock is on a very different basis, for it represents no new contract arising out of an option, but it was in pursuance of an absolute promise in the original contract, a part of the payment for timber already cut, just as the money paid was. It gave the corporation no new or different right in the standing timber.

Rehearing denied.