The **JEFFERSON MILLS, INC.**

v.

**UNITED STATES of America.**

Civ. A. No. 1029.

United States District Court
N. D. Georgia,
Gainesville Division.

April 5, 1965.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for plaintiff.

Charles L. Goodson, U. S. Atty., Atlanta, Ga., for defendant.

SLOAN, District Judge

In the complaint in the above captioned civil action plaintiff seeks to recover a refund of income taxes which it alleges were erroneously and illegally collected by defendant. Briefly stated, the complaint alleges:

That plaintiff is a corporation organized and existing under the laws of the State of Georgia engaged in the business of a textile manufacturer and that it is the largest employer in the City of Jefferson, Georgia, which is a city with a population of approximately 1750 persons.

That in the year 1959, but prior to any payments to the Board of Education of Jefferson, Georgia, plaintiff entered "into a binding argreement, whereby plaintiff obligated itself to pay the said Board. of Education the difference between the funds available from the State of Georgia and from local taxes for the Jefferson School System and the amount that was necessary to provide an adequate educational program in terms of competent, professionally trained personnel and an up-to-date curriculum, including a diversified training program, industrial arts, commercial, and outstanding science and mathematics courses."

That pursuant "to such contract" plaintiff paid to said Board of Education the following amounts:

For the fiscal year beginning October 1, 1958 and ending September 30, 1959 — $ 1800.00

For the fiscal year beginning October 1, 1959 and ending September 1, 1960 — $24,977.26

For the fiscal year beginning October 1, 1960 and ending September 30, 1961 — $24,075.00,

and that plaintiff deducted such amounts during the stated fiscal years as "ordinary and necessary business expenses upon its income tax returns for such years."

That the benefit derived by plaintiff from such agreement with the Board of Education and the payments made by plaintiff in connection therewith was, in general, that said Board was thereby able to maintain a program "which would attract and keep the caliber of personnel plaintiff needs in its business by providing an ample education for the children of plaintiff's employees. In addition, the education and training which graduates of the Jefferson City School System thus obtain causes them not only to be eligible, but also desirable prospective employees of plaintiff."

Plaintiff alleges that the Commissioner of Internal Revenue disallowed the above stated amounts as ordinary and necessary business expenses for each of said years.

Another claim asserted in the complaint is based upon defendant's disallowance as an ordinary and necessary business expense the sum of $21,000.00 paid by plaintiff in 1959 to Mrs. Rebekah Bryan, the widow of a deceased employee of plaintiff pursuant to a resolution of the Board of Directors of plaintiff authorizing a total payment to Mrs. Bryan of $58,000.00. The Commissioner of Internal Revenue disallowed this deduction. However, it now appears that plaintiff and defendant have agreed upon a settlement of this item subject to final approval by the Department of Justice, so this item is not now in controversy.

Plaintiff alleges that by reason of the above disallowances its income tax liability disclosed the following deficiencies:

For the fiscal year beginning October 1, 1958 and ending September 30, 1959 — $11,263.20

For the fiscal year beginning October 1, 1959 and ending September 30, 1960 — $12,338.77

For the fiscal year beginning October 1, 1960 and ending September 30, 1961 — $12,181.65,

and that said deficiencies, with interest, in the total amount of $42,360.25 were paid by plaintiff on January 27, 1964. Plaintiff alleges that it filed timely claims for refund for the respective years here involved and that the Commissioner of Internal Revenue disallowed said claims by letter dated June 3, 1964. Plaintiff alleges that by "virtue of the foregoing, defendant became indebted to the plaintiff in the full amount" of $42,-360.25 for which judgment is prayed.

The defendant in its answer denies that any income taxes and interest were

erroneously or illegally collected by it from plaintiff and denies that it is indebted to plaintiff.

Plaintiff has filed a motion for summary judgment for the relief demanded in the complaint, the motion being based upon the complaint, defendant's answer, plaintiff's answers to defendant's interrogatories and the depositions of W. L. Colombo, Joseph H. Porter, Thomas M. Bryan, II, and Morris Marion Bryan, Jr., and the exhibits attached thereto.

The defendant has also filed a motion for summary judgment in its favor on the grounds that there is no dispute as to any material fact involved in the controversy and that it is entitled to judgment as a matter of law. Defendant in support of its motion relies upon facts admitted in the pleadings, the interrogatories and answers thereto and the depositions of Joseph H. Porter, Thomas M. Bryan, II, Morris Marion Bryan, Jr., and W. L. Colombo and the exhibits attached thereto.

Both of the above stated motions for summary judgment are now properly before the Court for determination under the provisions of Local Rule 8.

From the depositions and answers to interrogatories and admissions in pleadings the following facts appear without dispute:

Plaintiff is a corporation organized and existing under the laws of the State of Georgia with its principal place of business in Jefferson, Jackson County, Georgia, a city with a population of less than 2,000 people and with a subsidiary plant at Crawford, Georgia.

Plaintiff corporation was purchased by the Bryan family about the year 1916 and has been operated continuously at full production, except for certain depression years, since that time. Its principal products are corduroys for use in the manufacture of garments, flannels for work gloves and twills for the production of men's work clothing and its main customers are commercial firms located throughout the United States.

Morris Bryan, Sr., was president and chairman of the Board of plaintiff from 1916 until the time of his death in 1948. Plaintiff's president during the years here involved and at the present time is Morris M. Bryan, Jr., and during the same period and since the year 1948 he has been Chairman of the Jefferson City School Board. He has also been a member of the Board of Regents of the University System of the State of Georgia since 1955.

Plaintiff employed during its fiscal years ending September 30, 1959, 1960, and 1961,—376, 328 and 283 persons, respectively, in its operation, the decline in employment in each year being due to the employment of new machinery, better methods and greater employee efficiency. A great number of plaintiff's employees are residents of Jefferson, Georgia, and the surrounding territory.

The children of plaintiff's employees attend the city schools maintained by the City of Jefferson, Georgia, and during its fiscal years 1959, 1960 and 1961 plaintiff hired 18, 25 and 10 graduates of the Jefferson schools and these new employees in each year represented approximately 50 percent of the total number of new employees for each of said years. The total enrollment in the Jefferson city school system during the years 1959, 1960 and 1961 was approximately 1385, 1396 and 1373, respectively, and it is estimated that 316, 276 and 238 children, respectively, of plaintiff's employees were enrolled in the Jefferson city schools for said years. This constituted approximately 25 percent of the total school enrollment for such years.

About 1954 or 1955 the School Board of the City of Jefferson realized that the funds available to it from the State and from local taxes were insufficient to establish and maintain an adequate school system and an attempt was made to obtain an increase in local taxes through

a professional reevaluation of local property and this is still an objective of the Board.

During the year 1957 or 1958 plaintiff made a survey of the educational level of its employees which disclosed that, on an average, its employees had attended school from six to seven years. As a result of this survey plaintiff's officers decided that this grade level of its employees was substantially lower than the level that plaintiff could continue to successfully operate a business in Jefferson and that a substantial improvement in the educational level of its employees was necessary in order to keep and to attract skilled and unskilled workers in its business.

At about this same time plaintiff's officers had begun to formulate some long range plans with reference to the future of its business and as to what it could become and it became apparent to them that the educational level of its employees was not, because of the educational environment existing in the City of Jefferson, in line with what was needed to insure the future success of plaintiff's business.

Plaintiff's officers decided at this time that they were confronted with three choices. One was to move its plant to Fulton or DeKalb County or some other place where better educational facilities existed. Second, plaintiff could put in a school of its own for its employees which would, of course, involve great expense and the separation of its employees from the other people in the community which was not thought to be advisable. The third alternative, and the one plaintiff's officers thought most desirable, the cheapest, most practicable and satisfactory was to enter into an agreement with the Board of Education of the City of Jefferson for the upgrading of the Jefferson City Schools whereby plaintiff would pay the difference between the state and local funds and the amount necessary to upgrade and maintain a school system of the necessary educational level.

It appears that the tax digest of the City of Jefferson provides a total tax collection of approximately $35,000.00 of which plaintiff corporation pays approximately 20 percent or a little more than $7500.00 of the taxes collected; roughly one-third of the taxes collected goes for school purposes, and to secure the necessary tax funds to provide for the minimum educational program here involved, the total tax take of the City would have to be more than tripled.

In August, 1959, as an outgrowth of discussions had by Morris M. Bryan, Jr., with Mr. Joseph H. Porter, Secretary of plaintiff corporation, and Mr. Thomas M. Bryan, II, Vice-President of plaintiff corporation, concerning the future of the Jefferson Mills, etc., a full discussion was had with the members of the Board of Education of the City of Jefferson with reference to the educational situation then existing and as a result thereof the officers of plaintiff corporation obligated the corporation to pay the difference between the funds available from the State of Georgia and local taxes for the operation of the Jefferson City School System and the amount that was necessary to provide a quality educational program which would prepare pupils for college and which would include a diversified curriculum with such programs as diversified cooperating training, industrial arts, commercial courses, outstanding science and mathematics courses, to employ additional teachers above the state allotment and to pay supplements to teachers, department heads, etc., so as to attract qualified teachers and administrators to the Jefferson School System and thus improve the caliber of education offered by the Jefferson City Schools. This obligation on the part of the corporation was to continue until tax funds became sufficient to cover the payments which plaintiff corporation was making pursuant to such agreement or obligation.

Pursuant to the above agreement plaintiff corporation made the following cash

payments to the Jefferson City School Board during the years here involved to supplement the operating budget of the Board:

For the fiscal year ending September 30, 1959     $ 1,800.00
For the fiscal year ending September 30, 1960     $24,977.26
For the fiscal year ending September 30, 1961     $24,075.00.

———◆———

By reason of the funds paid by plaintiff to the Board of Education of the City of Jefferson the school system was upgraded beginning in 1959 by the inauguration of a diversified training program, expansion of the industrial arts department, drafting and commercial courses and improvement in the science and mathematics courses; additional teachers were employed and supplements were paid to the teachers, department heads and administrators to improve the quality of the system's personnel. This resulted in the elementary school being accredited by the Southern Association of Schools and Colleges in 1964, the Jefferson elementary schools thus becoming one of only thirteen Georgia school systems so accredited.

Both plaintiff and the Board of Education of the City of Jefferson have at all times treated the agreement between them as a binding contract and both plaintiff and the Board of Education have performed the obligations imposed by such agreement.

The expenditures here involved for the years 1959, 1960 and 1961 were never considered or treated by the officers of plaintiff corporation as contributions but were considered and treated at all times as ordinary and necessary business expenses and so carried and treated on the corporate records and books.

Plaintiff had in years prior to 1959 made expenditures on behalf of the school system of the City of Jefferson. In 1946 it expended some $25,000 to $30,000 toward the construction of the original Jefferson High School building. In 1950 or 1951, either directly, or indirectly through the Jefferson Mills Welfare Association, it expended some $80,000 to $90,000 towards the cost of a new gymnasium. In 1958 the Jefferson Mills Welfare Association made a payment of $13,987.24 to the Jefferson City School System. However, none of these expenditures were made under any contract and all of them were treated by plaintiff as contributions and were claimed on its income tax returns as contributions and not as a business expense.

The payments here involved were deducted upon plaintiff's income tax returns for the years stated as ordinary and necessary business expenses. The Commissioner allowed the deductions as charitable contributions to the extent permitted by law (5 percent of taxable income in each year) and disallowed the excess thereof and on December 9, 1963, issued and mailed to plaintiff a deficiency letter covering claimed deficiencies for plaintiff's taxable years ending September 30, 1959, September 30, 1960, and September 30, 1961. Plaintiff paid the deficiencies claimed and filed timely claims for refund for each of said years. Plaintiff's claims for refunds were denied by the District Director of Internal Revenue on June 3, 1964, and plaintiff filed suit on June 24, 1964, to recover the sums so paid by it to defendant.

### Question Presented

Whether payments made by the taxpayer to the Jefferson City School Board constitute ordinary and necessary business expenses, deductible without limitation as the taxpayer contends or are deductible only as charitable contributions for a public purpose and subject to the statutory limitations applicable to such contributions as the government contends.

The Statutes and Regulations involved appear in the Appendix.

In the years prior to 1935 ordinary and necessary business expenses were deductible. Corporate charitable contributions, as such, were not deductible. Since 1935 all of the Revenue Acts have provided for charitable contribution deductions for corporate taxpayers, but specific statutory limitations have been placed on the amount of such deductions allowable.

In the years prior to 1935 a number of decisions allowing payments by corporations to charitable institutions to be deducted as business expense had been rendered. There are cases dealing with the payment by corporations to churches, schools and charities in mill towns which were allowed as business expense. Poinsett Mills v. Commissioner, 1 B.T.A. 6 (1924); Superior Pocahontas Coal Co. v. Commissioner, 7 B.T.A. 380 (1927); Holt Granite Mills Co. v. Commissioner, 1 B.T.A. 1246 (1925).

Numerous cases held that contributions to a local organization were deductible as business expense without the necessity of specific statutory authority so long as there was a showing that the donations were reasonably calculated to further the general business interest of the donor. Corning Glass Works v. Lucas, 59 App.D.C. 168, 37 F.2d 798, 68 A.L.R. 736; American Rolling Mill Co. v. Commissioner of Internal Revenue, 6 Cir., 41 F.2d 314; Commissioner of Internal Revenue v. F. & R. Lazarus & Co., 6 Cir., 101 F.2d 728; Fairmount Creamery Corp. v. Helvering, 67 App.D.C. 66, 89 F.2d 810.

The Internal Revenue Act which allowed the deduction of charitable contributions by corporate taxpayers did not in any way limit the corporate deductions as business expense and in 1938, the forerunner of what is presently § 162(b), Appendix, infra, was included in the 1938 Revenue Act. The effect of the earlier statutes was to exclude from the category of payments otherwise deductible as an ordinary and necessary business expense any amount which would also qualify as a charitable contribution.

The original statute which was carried over into § 162(b) of the 1954 Code was § 23(a)(1)(B) of the Revenue Act of 1938, c. 289, 52 Stat. 447. The legislative history of the earlier Act, H. Rep. No. 1860, 75 Cong. 3rd Sess. pp. 17–18 (1939–1 Cum. Bull. Part II, 728, 740) provides an explanation of the reason the section was added and an example of its operation, as follows: The corresponding provisions of the 1954 Code are indicated by brackets inserted):

"Under § 23(q) [170(a)] of the Revenue Act of 1936 a corporation is allowed a deduction (limited to 5 percent of the net income), for contributions or gifts made to organizations described in such section (so-called charitable organizations). In some cases a contribution or gift to such an organization may also fall within the description of business expenses. § 23(a) [162(a)] allows a deduction for business expenses. Consequently, a corporation may claim it is entitled to obtain the benefit of deductions for such gifts and contributions, as business expenses, the effect of which would be that the amount of the deductions for contributions or gifts would exceed the 5 percent limitation contained in such § 23(q) [170(b)]. This is no longer possible under the bill. § 23(a)(2) [162(b)] thereof provides that a contribution or gift to such an organization will not be deductible as a business expense if a deduction in respect of such contribution or gift is allowable under section 23(q) [170(a)] of the bill. Nor will a deduction be allowable under section 23(a) [162(a)] for any amount disallowed under § 23(q) [170(a)] because of the 5 percent limitation or because of the requirement of payment contained in the latter section. (See discussion under § 23(q).). Hence, if a corporation makes a cash contribution of $10,000, only $5,000 of which is deductible under § 23(q) [170(a)] no deduction whatever is allowable under § 23(a) [162(a)] for the other $5,000.

In the example given, if the gift consisted of property other than money, the fair market value of which is $15,000, but which had cost the corporation only $10,000, the result under the provisions of the bill would be identical, only $5,000 being deductible under § 23(q) [170(a)], and no deduction whatever being allowable under § 23(a) [162(a)].

"The limitations of § 23(a)(2) [162 (a)] applies only to payments which are contributions or gifts. A deduction is not to be disallowed under § 23(a)(2) [162(a)] of the bill merely because the recipient of amounts received from the corporation is a so-called charitable organization within the meaning of § 23(q) [170(a)], as, for example, in the case of a payment by a mining company to a local hospital in consideration of an obligation assumed by the hospital to provide hospital services and facilities for the employees of the company."

The defendant on page 16 of its brief states: "Additionally it is clear from the last sentence of the just quoted material that merely because a payment is made to a charitable organization it is not necessarily subject to the percentage limitations if it is not in fact a contribution."

There is no question but that a contract between the plaintiff taxpayer and the Jefferson City Board of Education was entered into.

There is no question but that the contract was performed by each party, i. e., the money was paid by the plaintiff taxpayer and the improved and expanded educational program was furnished by the Board.

There is no question but that the plaintiff taxpayer at all times considered and on their books treated the payments here involved as business expense and this is true though payments to the same Board in former years when there was no contract were by plaintiff treated as contributions.

CONTENTIONS OF DEFENDANT

1. The defendant contends that the payments were made without legal consideration and were therefore mere contributions.

Here the Board was to furnish an improved and expanded educational program commensurate with the payments by the taxpayer who contracted to pay only the costs of such additional improved and expanded services.

2. The defendant contends that "payments made to support a local school system, regardless of the business motive or benefit received by the donor corporation, are deductible only as charitable contributions and not as business expenses."

3. The defendant further contends that the alleged consideration for the payments, i. e. providing the best possible school program was no more than performance of the obligation imposed on the Board by the laws of the State of Georgia.

Contentions Nos. 2 and 3 are answered by pointing out that the Board's legal duty was fully performed when it provided the best possible school program that could be paid for with available tax funds.

The payments were not "to support the local school system" but to defray the costs of the additional improved and expanded program that the Board could not furnish with available tax funds.

4. The defendant further contends that no valid contract existed between the taxpayer and the Board in that the Board has no power to bind the City of Jefferson or the State of Georgia for payments in excess of available tax funds.

In support of this position the defendant cites the case of Appling v. City of Abbeville, 136 Ga. 772, 72 S.E. 31. In

that case where a teacher had sued the City of Abbeville for salary the Court held:

"* * * The board of education had no authority to create any debt against the city. Their power to contract carried with it the limitation that the liabilities which they might create were payable only from the funds appropriated to the support of the schools."

The above ruling has no application here.

Here the Board was empowered by the General Assembly of Georgia, "* * * to make contracts and to do any and every other thing that may be necessary or proper for the conduct and carrying on of said public and high school system in the city of Jefferson." Ga.Laws 1914, pp. 929, 930.

The Board did not by this contract create any liability that it did not have available funds to meet. Indeed, the contract by its terms provided the funds to meet every obligation that the Board in this contract agreed to assume.

■ The law of Georgia is controlling in interpreting and construing a Georgia contract. Brown v. C. I. R., 69 F.2d 863 (5 Cir.); Mertens—Federal Income Taxation § 61.06.

The contract, under the facts here, was based on a valid consideration.

"A consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise." Ga.Code, §§ 20–302, 20–304.

"Slight consideration is sufficient to sustain a contract, and courts of law will not look closely into its adequacy." Wolfe v. Breman, 69 Ga.App. 813, 26 S.E. 633.

"In Stanley v. Schwalby, 162 U.S. 255, 276, 16 S.Ct. 754, 763, 40 L.Ed. 960, the court said: 'A valuable consideration may be other than the actual payment of money, and may con-

sist of acts to be done after the conveyance. * * * The advantage enuring to the city of San Antonio from the establishment of the military headquarters there was clearly a valuable consideration for the deed of the city to the United States.' In the instant case 'the acts to be done after the conveyance' were the employment of professors and the operation of the college. And not only did a benefit accrue to the citizens of Valdosta, but the obligation to operate the college, with the possibility of loss, was incurred by Emory University. See [Georgia] Code, 1933, §§ 20–301, 20–304. There was a valuable consideration to support the purchase and sale of the property to Emory University." Sheldon & Co. v. Emory University, 52 Ga.App. 628 at p. 631, 184 S.E. 401 at p. 403.

■ Under the facts here the contract between the taxpayer and the Board was a binding and enforceable contract and the payments made by the taxpayer under said contract were not contributions or gifts within the meaning of § 170 of the Internal Revenue Code of 1954.

■■ In construing the federal income tax provisions for the deduction of ordinary and necessary business expenses it is essential that the expenses have been paid or incurred in carrying on a trade or business. The words employed in the federal income tax laws are to be given their usual, ordinary and everyday connotation. That is, they must be given their rational practical meaning.

■ Ordinary expenses are not necessarily habitual or normal expenses in the sense that the same taxpayer will have to make them often but may include an expense that happens only once in a taxpayer's lifetime. Campbell v. Fields, 5 Cir., 229 F.2d 197(4) (5).

■ There being no ready touchstone for the determination of what are and what are not ordinary and neces-

sary expenses within the statute, the question is one that must of necessity be decided in each case on its own particular facts. Welch v. Helvering, 290 U.S. 111; 54 S.Ct. 8, 78 L.Ed. 212.

Many factors, including the nature and condition of the particular business, will be relevant to be considered in the ultimate determination as to whether a particular payment is deductible as an ordinary and necessary business expense. Helvering v. Highland, 4 Cir., 124 F.2d 556.

Here the taxpayer because of the inferior local school decided that it was confronted with three choices, one of which it must accept. (1) Plaintiff could move its plant to some place with better educational facilities, or (2) it could put in a school of its own, or (3) it could contract with the Board for the upgrading of the Jefferson City School.

The taxpayer's officers decided that the last alternative was most desirable and the contract here was entered into. This was a valid decision and the payments made under such contract were properly treated as ordinary and necessary business expenses as that term is used in § 162(a) of the Internal Revenue Code of 1954.

There being no genuine dispute as to any material fact, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.

The defendant is directed to have the amount of refund due to plaintiff hereunder properly computed by the Internal Revenue Service so that it may be made a part of the judgment which the Court hereby directs be prepared and presented.

APPENDIX

Internal Revenue Code of 1954:

§ 162. Trade or business expenses

(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

* * * * * *

(b) *Charitable contributions and gifts excepted.*—No deduction shall be allowed under subsection (a) for any contribution or gift which would be allowable as a deduction under section 170 were it not for the percentage limitations [the dollar limitations], or the requirements as to the time of payment, set forth in such section.

* * * * * *

(26 U.S.C. 1958 ed., § 162.)

§ 170. Charitable, etc., contributions and gifts

(a) *Allowance of deduction.*—

(1) *General rule.*—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.

* * * * * *

(b) *Limitations.*—

* * * * * *

(2) *Corporations.*—In case of a corporation, the total deductions under subsection (a) for any taxable year shall not exceed 5 percent of the taxpayer's taxable income. * * *

* * * * * *

(c) *Charitable contribution defined.*—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

(1) A state, a Territory, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.

* * * * * *

(26 U.S.C. 1958 ed., § 170.)

Miscellaneous:

Treasury Regulations on Income Tax:

§ 1.162–15. *Excepted contributions.*

(a) No deduction is allowable under § 162(a) for a contribution or gift by an individual or a corporation if any part thereof is deductible under section 170. For example, if a taxpayer makes a contribution of $5,000 and only $4,000 of this amount is deductible under § 170(a) (whether because of the precentage limitation under either § 170(b) (1) or (2), the requirement as to time of payment, or both), no deduction is allowable under § 162(a) for the remaining $1,000.

(b) The limitations provided in § 162(b) and this section apply only to payments which are in fact contributions or gifts to organizations described in § 170. For example, payments by a street railway company to a local hospital (which is a charitable organization within the meaning of § 170) in consideration of a binding obligation on the part of the hospital to provide hospital services and facilities for the company's employees are not contributions or gifts within the meaning of § 170 and may be deductible under § 162(a) if the requirements of § 162(a) are otherwise satisfied. Donations to organizations other than those described in § 170 which bear direct relationship to the taxpayer's business and are made with a reasonable expectation of a financial return commensurate with the amount of the donation may constitute allowable deductions as business expenses. For example, a street railway company may donate a sum of money to an organization (of a class not referred to in § 170) intending to hold a convention in the city in which it operates with a reasonable expectation that the holding of such convention will augment its income through a greater number of people using its cars.

* * * * * *

(26 C.F.R., § 1.162–15)