**KNAPP BROTHERS SHOE MANUFAC-
TURING CORPORATION, Plaintiff,**

**v.**

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 66–33–F.**

United States District Court
D. Massachusetts.

March 14, 1967.

Robert W. Meserve, John K. P. Stone, III, Nutter, McClennen & Fish, Boston, Mass., for plaintiff.

W. Arthur Garrity, Jr., U. S. Atty., Joseph A. Lena, Asst. U. S. Atty., Robert F. Sama, Trial Atty., Tax Division, Dept. of Justice, Mitchell Rogovin, Asst. Atty. Gen., D. R. Anderson, Attys., Dept. of Justice, Washington, D. C., for defendant.

OPINION

FRANCIS J. W. FORD, District Judge.

This is an action by a corporation to recover alleged overpayments of federal corporation income taxes for its fiscal years ending March 31, 1957 through March 31, 1960, arising from the disallowance of its deduction of certain payments in each of these years as charita-

ble contributions. The resulting deficiencies were paid, claims for refund were duly filed and disallowed by defendant.

Plaintiff is a Delaware corporation organized on March 13, 1948, having its principal office in Brockton, Massachusetts and engaged in the manufacture and sale of shoes. On March 31, 1948 it acquired from the owners, Clarence E. Knapp and Edwin D. Knapp, all the stock of Knapp Brothers, Inc. for a total consideration of $5,100,000. On the same day four other corporations, wholly owned subsidiaries of Knapp Brothers, Inc., were merged into plaintiff.

Plaintiff was formed by three New York lawyers who contributed the initial capitalization of $1000. Their purpose in forming the corporation was to confer an ultimate benefit on New York University, and they considered the $1000 they paid as a contribution to the University although they claimed no tax deduction for it. It was the intention of the parties, which was in fact carried out, that the $5,100,000 purchase price would be paid to the Knapps out of the earnings of the corporation.

The plaintiff's certificate of incorporation contains the following pertinent provisions:

"THIRD: * * * no part of its income or property shall inure to the private benefit of any stockholder, director, or officer, or any individual or corporation other than New York University. The directors shall from time to time distribute to New York University such part of the property and/or net income of the Foundation as they may determine and as may legally be distributable.

"FOURTH: The objects for which the Foundation is formed are:

(a) To distribute to New York University such part of its property and/or its net income, as the directors of the Foundation may determine.

* * * * * *

"NINTH: * * *

* * * * * *

(h) No stockholder shall at any time be entitled to dividends on his shares; nor shall he at any time be entitled to any of the profits or assets of the Foundation. The profits or assets of the Foundation available for distribution shall be paid from time to time, at the discretion of the directors, to New York University; and in the event of the liquidation, dissolution, or winding up of the Foundation, whether voluntary, involuntary or by operation of law, except as may otherwise be provided by law, the directors of the Foundation shall, after payment of all creditors, distribute the assets of the Foundation to New York University."

On April 1, 1948 the original stockholders transferred all the stock of plaintiff to a voting trust for a period of ten years, later extended. The trust provides that four months after the termination of the trust or its last extension the stock is to be transferred to New York University.

Neither New York University, nor any of its officers, trustees or employees had any part in the organization of plaintiff or provided any of its capital. The University has never owned any stock in the plaintiff. Since the organization of plaintiff no director, officer, trustee or employee of plaintiff has ever been an officer, trustee or employee of the University. The University has never participated in any way in the selection of the voting trustees or of plaintiff's directors or officers. No trustee, officer or employee of the University has ever participated in, influenced or attempted to influence, or consulted with the plaintiff's directors in connection with the conduct of plaintiff's affairs. No trustee, officer or employee of the University has ever directed plaintiff to make a contribution to it, or requested such a contribution, and plaintiff's directors have never consulted with the University as to what contributions should be made.

In the tax years involved here plaintiff paid the following amounts to New York University and to New York University-

Bellevue Medical Center (a separate administrative unit of the University):

| Year Ending | University | Center |
|---|---|---|
| March 31, 1957 | $600,000 | $100,000 |
| March 31, 1958 | 50,000 | 100,000 |
| March 31, 1959 | 150,000 | 100,000 |
| March 31, 1960 | 150,000 | 100,000 |

Each of these payments was voted or ratified by plaintiff's directors as a charitable contribution. None of the directors considered that there was any obligation to make any particular payment. The recipients treated the payments received as charitable contributions. During these years the plaintiff made charitable contributions in small amounts to beneficiaries in the areas where its factories are located.

During the year in question New York University and the Medical Center were charitable organizations of the type described in § 170(c) (2) of the Internal Revenue Code of 1954. Plaintiff claimed as a deduction for charitable contributions the following amounts of its payments to the University and the Medical Center:

| Year | Amount Deducted |
|---|---|
| 1957 | $100,000.00 |
| 1958 | 102,337.87 |
| 1959 | 98,383.14 |
| 1960 | 110,079.29 |

These deductions were disallowed and after payment of the tax deficiencies assessed, plaintiff filed claims for refund aggregating $243,838.90, plus interest. These claims were disallowed in their entirety.

■ The government's position is that these payments were not charitable contributions. It argues first that the court should find that the University is in substance the owner of plaintiff corporation and cannot be entitled to a deduction for a charitable contribution to itself. It further argues that any charitable contribution must be something in the nature of a gift, and that in view of the restrictions of plaintiff's charter any payment to the University was not in any sense a gift but merely the fulfilling of a legal obligation.

It cannot be found that the University is the owner of plaintiff. In form the plaintiff is clearly a distinct entity in which the University has no right of ownership. The University's sole interest is that only the University can receive any distribution of the income or property of plaintiff, if and when such a distribution may be made, and eventually to receive the proceeds of any liquidation of plaintiff. The University had no part in the formation of plaintiff, it has no right to exercise any control over the plaintiff and its affairs, either directly or indirectly, and it has not in fact ever exercised or sought to exercise any control or influence over plaintiff. Plaintiff is in fact as well as in form a completely independent entity. The University is the ultimate beneficiary of its activities but it cannot be called in any sense its owner.

■ The University has no right to control payments the corporation may make to it, and does not in fact seek to control or influence them. The certificate of organization clearly leaves the amount and the time of any payment to the discretion of the directors of the corporation. The University has at no time a present and immediate right to any payment from the corporation. The directors may in their sound judgment retain the profits of the corporation for business expansion or other legitimate corporate purposes. Any funds not distributed to the University remain subject to the risks of a business over which the University has no control and therefore the University may never get them. The action of the directors in voting to make a payment was a free act on their part conferring on the University a financial benefit to which it had no present and immediate right and which possibly it might never receive. Such a payment qualifies as a contribution rather than a legally required payment. It is none the less a contribution because the

directors could not pay the money to anyone else, so long as they were free to decide to pay it to the University or not. SICO Foundation v. United States, 295 F.2d 924, 155 Ct.Cl. 554.

 Government contends that allowance of these deductions as charitable contributions is barred by § 502 of the Internal Revenue Code which provides:

"An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt under section 501 on the ground that all of its profits are payable to one or more organizations exempt under section 501 from taxation. For purposes of this section, the term 'trade or business' shall not include the rental by an organization of its real property (including personal property leased with the real property)."

Literally this only excludes plaintiff here from the exemption provided by § 501, on which plaintiff bases no claim. There is no basis for holding, as defendant appears to argue, that because § 502 says that plaintiff is not entitled to the exemption granted by § 501, it is entitled to no exemption at all. The provisions of § 502 were first brought into the Code by the Revenue Act of 1950. Prior to that time an organization carrying on a business for profit would have all its income exempt from taxation provided all its profits were payable to a tax-exempt charitable organization. Plaintiff indeed appears to have been originally organized in the way it was to take advantage of that exemption and was in fact held entitled to it. Knapp Brothers Shoe Manufacturing Corporation v. United States, 142 F.Supp. 899, 135 Ct.Cl. 797. The purpose of Congress in enacting the provision now found in § 502 was to terminate the complete tax exemption of such business because it was felt that it was thereby being given an unfair competitive advantage over competitors organized for private profit. In order to attain the purpose of § 502 it is not necessary to go beyond what it literally requires to deny plaintiff the exemption it claims here. Plaintiff here is now subject to taxation on its income in the same manner as its competitors operating for private profit. Those competitors would clearly be entitled to claim a tax deduction within the limitation of § 170(b) (2) for a contribution to New York University or any other properly qualified charitable organization. Plaintiff should equally be entitled to it. To say that it cannot claim a deduction for its payments to New York University because it was organized for the specific purpose of benefiting New York University and cannot distribute its profits to other beneficiaries would be to go beyond the purpose of § 502 and place plaintiff in a worse tax position than its competitors.

Judgment will be entered for plaintiff in the amount of $243,838.90 with interest and costs.