**CROSBY VALVE & GAGE COMPANY**
(Formerly Crosby Steam Gage &
Valve Company), Petitioner,

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent.**

No. 6872.

United States Court of Appeals
First Circuit.

June 21, 1967.

Jack H. Calechman, Boston, Mass.,
with whom Alford P. Rudnick and Peter

D. Gens, Boston, Mass., were on brief,
for petitioner.

Albert J. Beveridge, III, Atty., Department of Justice, with whom Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Department of Justice, were on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Is a business corporation, wholly owned by a charitable foundation, entitled to a charitable deduction for property (in this case equity in bonds) turned over without consideration to its parent? This is the issue posed by this petition to review a decision of the Tax Court.

The Tax Court held that the transfers to the foundation were not deductible. It placed primary emphasis on its syllogism that (1) "charitable contribution" is synonymous with "gift"; (2) a gift proceeds from a "detached and disinterested generosity"; and (3) since the transfers in this case were the result of the foundation's control over the corporation they were motivated by legal duty to its sole stockholder, and not by disinterested generosity. While agreeing with the holding of the Tax Court, we think it necessary to register our disagreement with the majority's emphasis upon a purely charitable motive as a prerequisite for a deductible charitable contribution. Were the deductibility of a contribution under section 170(c) of the Internal Revenue Code of 1954 to depend on "detached and disinterested generosity", an important area of tax law would become a mare's nest of uncertainty woven of judicial value judgments irrelevant to eleemosynary reality. Community good will, the desire to avoid community bad will, public pressures of other kinds, tax avoidance, prestige, conscience-salving, a vindictive desire to prevent relatives from inheriting family wealth—these are only some of the motives which may lie close to the heart, or so-called heart, of one who gives to a charity. If the policy of the income tax

laws favoring charitable contributions is to be effectively carried out, there is good reason to avoid unnecessary intrusions of subjective judgments as to what prompts the financial support of the organized but non-governmental good works of society.

Such cases as DeJong v. Commissioner of Internal Revenue, 309 F.2d 373, 376 (9th Cir. 1962) and Channing v. United States, 4 F.Supp. 33, 34 (D.Mass.), aff'd per curiam, 67 F.2d 986 (1st Cir.), cert. denied, 291 U.S. 686, 54 S.Ct. 563, 78 L.Ed. 1072 (1933), do not make such intrusion necessary. These cases dealt with payments in the nature of tuition for educational services rendered to taxpayers' children.[1] As such, the payments were purchases of services rather than net additional resources made available without restriction to charities for their purposes. Thus, the transfers were clearly "personal * * * or family expenses", Int.Rev.Code of 1954, § 262, rather than "gifts or charitable contributions".

What is confusing in such cases and in the Tax Court's opinion is reference to the law excluding from the gross income of individuals the value of property acquired by gift. See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). For in such cases it is important to scrutinize the motive of the transferor, to prevent the disguising of compensation for services rendered, e. g., Commissioner of Internal Revenue v. LoBue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed.

1142 (1956), and allow exclusion only of property given from "a detached and disinterested generosity", Robertson v. United States, 343 U.S. 711, 72 S.Ct. 994, 96 L.Ed. 1237 (1952). While the law recognizes gifts to individuals and organizations other than charities, it does not so positively encourage them. And, particularly when the transfer of property without consideration is made beyond a family setting and in a business atmosphere, it is properly subjected to a searching inquiry as to the real motivation of the transferor.

But in the case of a contribution to a charitable organization, the law's policy finds charity in the purposes and works of the qualifying organization, not in the subjective intent of the contributor. On this issue we agree with the concurring and dissenting judges of the Tax Court.

We affirm on the alternative ground for the Tax Court's decision—that there is "no reason for a difference in tax treatment merely because the income was earned by a wholly-owned subsidiary rather than directly by the tax exempt organization."

As this language indicates, there is no specific statutory provision which compels but one result. The transfers in this case fall equally within the literal meanings of "charitable contribution" under section 170(c) of the Internal Revenue Code, and of "dividend" under section 316(a).[2] Neither provision pro-

---

1. See also Jefferson Mills, Inc. v. United States, 259 F.Supp. 305 (D.Ga.1965), aff'd per curiam, 367 F.2d 392 (5th Cir. 1966), where the government took precisely the opposite position to that which it argues here, unsuccessfully arguing that "payments made to support a local school system, regardless of the business motive or benefit received by the donor corporation, are deductible only as charitable contributions and not as business expenses." 259 F.Supp. at 312.

2. Section 170(c) reads in relevant part as follows:
    "(c) *Charitable contribution defined.*—For purposes of this section, the

term 'charitable contribution' means a contribution or gift to or for the use of—

   *    *    *    *    *

   "(2) A corporation, trust, or community chest, fund, or foundation—
   *    *    *    *    *

   "(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals;

   "(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and
   *  *  *."

vides a clue to resolving the problem, for the transfers in this case were admittedly made to a qualifying charity and were also a distribution of property by a corporation to its shareholder.

Therefore we are both permitted and impelled to seek guidance in the purposes sought to be achieved by Congress. We find the necessary clues in the statutory treatment and legislative background of the taxation of unrelated business income of charitable organizations. At the time of passage of the Revenue Act of 1950, one of the problems faced by Congress stemmed from the widespread and increasing involvement of charities in profit-making enterprise. The House Committee on Ways and Means stated its concern: "The tax-free status of these * * * organizations enables them to use their profits tax-free to expand operations, while their competitors can expand only with the profits remaining after taxes. * * *" H. Rep. No. 2319, 81st Cong., 2d Sess. 37 (1950).

The result of this concern was the passage of what are now sections 502 and 511–515 of the Internal Revenue Code of 1954. One of the purposes was to avoid unfair competition, not by denying an exemption to charitable organizations carrying on business activities unrelated to their mission, but by treating them the same as their non-charitable competitors. H.Rep. No. 2319, supra. This was accomplished by section 511, imposing a tax on "unrelated business taxable income (as defined in section 512)"; and section 512(b) (10), which specifically allows the charity a section 170 deduction from unrelated business income up to 5 percent of such income.

The statutes, therefore, made it clear that no longer was a charity-run business enterprise free from income taxation. But charities could give to charities up to 5 per cent of their unrelated business income and have the benefit of the charitable deduction. While the statute did not specifically proscribe a charity's claiming the deduction for income retained by itself, both Senate and House committee reports stated clearly that "the contribution, whether made by a trust or other exempt organization, must be paid to another organization to be allowable." H.Rep. No. 2319, supra, at 111; S.Rep. No. 2375, 81st Cong., 2d Sess. 109 (1950). This refinement is carried over into section 1.512(b)—1(g) (3) of the Treasury Regulations.

There remains the case, presented by that before us, of a business subsidiary of a charity which desires to claim the 5 per cent deduction for its contributions to its parent. A closely analogous situation was discussed in the House and Senate committee reports:

"Some of the witnesses who appeared before your committee took the position that this unrelated business income should be taxed only if received by a subsidiary organization. However, it is difficult to see why a difference in tax treatment should be allowed merely because in one case the income is earned directly by an educational or charitable organization, while in the other it is earned by a subsidiary of such an organization. In both cases the income is derived from the same type of activities and disposed of in the same manner. Moreover, in most cases the business functions now carried on by subsidiaries could be transferred to the parent if the tax were applied only to the income of the subsidiaries."

H.Rep. No. 2319, supra, at 37; S.Rep. No. 2375, supra, at 29.

Section 316 reads in relevant part as follows:

"(a) *General Rule.*—For purposes of this subtitle, the term 'dividend' means any distribution of property made by a corporation to its shareholders—

* * * * *

"(2) out of its earnings and profits of the taxable year * * *.
Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. * * *"

Whether the charity operates the business directly or through a subsidiary, the economic and competitive implications of allowing a deduction for income that in fact is retained by the charity would be the same. In each case, either the charity would receive a greater return on its investment in its business than a non-charity, which could allow it to expand that business with less recourse to external financing, or the business itself would have a critical "cushion", allowing it to cut prices, increase services, etc., to the disadvantage of non-charity-linked competitors.[3]

■ Petitioner argues that disallowing the deductions in this case would place it in a worse position than competitors, since they could claim a deduction for contributions made to its parent charity while it could not. But petitioner can take full advantage of the deduction by contributing to any *other* charity. Its universe is decreased by only one member. Moreover, were petitioner's deductions to be allowed it would be able to make a partially tax-free distribution of its earnings to its sole shareholder— something denied to its competitors and clearly contrary to the approach to the tax treatment of "feeder" organizations taken by section 502 of the Internal Revenue Code.[4] In sum, we conclude that the transfer in this case must be treated as a non-deductible dividend under section 316.

We add that our holding is not based on the intention or *bona fides* of the petitioner. Petitioner has argued that its purposes could have been accomplished using other techniques and that form should be disregarded. Apart from pointing out that, as individuals now interested in petitioner's claim have else-

---

3. For example, suppose a competing business corporation not owned by a charity (call it Hope Valve & Gage Co.) and the petitioner (Crosby Valve & Gage Co.) each has net earnings before taxes of $10,000,000, and each wishes to produce the maximum return to its stockholders. Then if Crosby can deduct 5% of its earnings by distributing that amount to its charitable sole stockholder and calling it a charitable contribution rather than a dividend, the result is as follows:

| | CROSBY | HOPE |
|---|---|---|
| Net earnings (N): | $10,000,000 | $10,000,000 |
| Charitable deduction (D): | 500,000 | 0 |
| Taxable income (N-D): | 9,500,000 | 10,000,000 |
| Tax (T) [47% (N-D)—$5,500]: | 4,459,500 | 4,694,500 |
| Earnings available for distribution to stockholders (N-T): | $ 5,540,500 | $ 5,305,500 |

If, on the other hand, Crosby's charitable stockholder is content with the same return earned by its competitor, Crosby has the option of retaining the difference of $234,000 in earnings to finance competition in services, etc., or of cutting prices to a level that produces $9,575,429 in net earnings, with the following effect:

| | CROSBY | HOPE |
|---|---|---|
| Net earnings: | $ 9,575,429 | $10,000,000 |
| Charitable deduction: | 478,771 | 0 |
| Taxable income: | 9,096,658 | 10,000,000 |
| Tax: | 4,269,929 | 4,694,500 |
| Earnings available for distribution to stockholders: | $ 5,305,500 | $ 5,305,500 |

In either case, Crosby would have precisely the competitive advantage that Congress sought to prevent. Furthermore, if Hope chose to contribute any amount to charity, even to Crosby's parent charity, that amount would reduce the amount available to Hope's stockholders and thus would increase the disparity.

4. "An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt under section 501 on the ground that all of its profits are payable to one or more organizations exempt under section 501 from taxation. * * *"

where demonstrated to their advantage, Stone v. Commissioner of Internal Revenue, 360 F.2d 737 (1st Cir. 1966), form is not so easily disregarded in this field, we resist making further generalizations unnecessary to the decision of this case.[5]

Affirmed.

5. In particular we would not wish any unnecessary generalizations that we might make to affect our consideration of, or decision in Knapp Bros. Shoe Mfg. Corp. v. United States, 265 F.Supp. 133 (D. Mass., 1967), the appeal in which has not yet been heard.