**UNITED STATES of America, Defendant, Appellant,**

v.

**KNAPP BROTHERS SHOE MANUFAC- TURING CORPORATION, Plaintiff, Appellee.**

**No. 6955.**

United States Court of Appeals First Circuit.

Nov. 2, 1967.

Albert J. Beveridge, III, Atty., Dept. of Justice, with whom Mitchell Rogovin, Asst. Atty. Gen., Meyer Rothwacks and Harry Baum, Attys., Dept. of Justice, Washington, D. C., Paul F. Markham, U. S. Atty., and Joseph A. Lena, Asst. U. S. Atty., Boston, Mass., were on brief, for appellant.

Robert W. Meserve, Boston, Mass., with whom John K. P. Stone, III, and Nutter, McClennen & Fish, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

In 1948 three individuals interested in New York University, a recognized charitable organization within the federal income tax statute, now Int.Rev. Code of 1954, § 170(c) (2), formed taxpayer, Knapp Brothers Shoe Manufacturing Corporation. The certificate of incorporation was peculiar in that it provided, "No stockholder shall at any time be entitled to dividends on his shares; * * * [or] to any of the profits or assets * * *." The sole distributee of both income and property, irrevocably in perpetuam, was New York University. The only limitation upon the University's interest was the immediate one that, since it was not a stockholder,[1] and there-

---

1. The stock is presently held in a voting trust, in which the University does not participate. Concededly the trust ef- fected no substantive change so far as the University's interest was concerned.

fore had no voting rights, or share in the management, it had no say as to when or what distributions should be made.

Upon its formation taxpayer acquired all of the assets of Knapp Brothers, Inc., a successful shoe manufacturer, the purchase price to be paid out of earnings. The business continued to be profitable and during the taxable years 1957–1960 taxpayer made substantial payments to the University which it labelled in giving, and the University labelled in receiving, "contributions." The issue is whether these payments are to be regarded in law as charitable contributions for which, up to the 5% limitation in section 170(b) (2), taxpayer could take a deduction against gross income. The district court held for the taxpayer. Thereafter we decided Crosby Valve & Gage Co. v. Commissioner of Internal Revenue, 1 Cir., 1967, 380 F.2d 146, in favor of the government. The question now before us is whether taxpayer can escape the ambit of that case.

In *Crosby Valve* the taxpayer, a business corporation like the present taxpayer, was wholly owned by a charitable foundation. It made periodic payments to the charity which we found fell "equally within the literal meanings of 'charitable contribution' under section 170(c) of the Internal Revenue Code, and of 'dividend' under section 316(a)." 380 F.2d at 147. Thus unable to define the payments for tax purposes from a literal reading of the two sections, we sought Congressional purpose through an evaluation of the overall statutory treatment of charitable organizations. We concluded that in this respect Congress intended to place charitably-owned businesses which were not themselves charities on the same footing as their noncharitable competitiors, as evidenced by the feeder organization and unrelated business income provisions of the 1954 Code, sections 502, 511–515, and that we must select against the taxpayer to prevent its enjoying an advantage over its competitors contrary to the purpose of the act.

> "[W]ere petitioner's deductions to be allowed it would be able to make a partially tax-free distribution of its earnings to its sole shareholder—something denied to its competitors and clearly contrary to the approach to the tax treatment of 'feeder' organizations taken by section 502 of the Internal Revenue Code." 380 F.2d 149.

In the case at bar taxpayer argues that the University is neither "owner" nor "shareholder," and that the *Crosby Valve* rationale is therefore inapplicable. "[T]he *owners* of appellee," it urges, "are the voting trustees, who, under the voting trust instruments, are vested with both legal and beneficial ownership of the stock. The University is a beneficiary, if at all, only in the narrow sense of being entitled to any corporate profits or assets when and if the voting trustee-elected directors choose to bestow them." We cannot agree. In fact, we would describe the substance of the situation as precisely the reverse. It is the University which possesses the real beneficial interest. It is the stockholders group that "is a beneficiary, if at all, only in the narrow sense," viz., of being entitled to choose when to bestow the profits. They neither have nor can have any interest or purpose apart from the ultimate interest of the University.[2]

Taxpayer argues that the University may never receive any funds from it;

---

**2.** The interest of the stockholders as holders of the *legal* title is even less "adverse" to the University than that of the ordinary inter vivos trustee whose consent is required to exercise a power of termination. Cf. New England Merchants Nat'l Bank of Boston v. United States, 1 Cir., 384 F.2d 176. In the usual trust, postponement of termination may result in the ultimate appearance of new beneficiaries. Here, the interest of the University in the property can never be terminated.

that the stockholders may retain all profits in the company, and the company, instead of succeeding, may go bankrupt. Initially this overlooks the fact that the University has already received the substantial profits which are presently involved. More fundamentally, if it never receives further payments it will be because there are no profits or assets to distribute, not because they are distributable to someone else. The possibility that no one will benefit from the operations of the taxpayer does not alter the fact that if any profits do become payable, they are payable to the University.[3]

This conclusion is not at variance with the fact that taxpayer, like any business corporation, may make limited charitable contributions within its community, large or small as it views it, by virtue of section 170(b)(2). In enacting this statute we believe that Congress recognized that good citizenship and charitable giving were, to put it bluntly, good business.[4] Charity that begins at home, however "amiable,"[5] is not within that concept. We see no reason why taxpayer should escape this fact any more than *Crosby Valve*.

The judgment of the District Court is reversed and judgment is ordered for the defendant.

---

3. In a very real sense, accordingly, taxpayer falls within the language, as well as the intent, of section 502 (a "business for profit * * * all of [whose] * * * profits are payable to one or more organizations exempt under section 501 from taxation.") upon which we relied in deciding *Crosby Valve*.

4. Even prior to the first enactment of a charitable deduction provision for corporations in 1935 (ch. 829, 49 Stat. 1014), corporations were permitted deductions for "donations which legitimately represent a consideration for a benefit flowing directly to the corporation as an incident of its business." Reg. 74, Art. 262, quoted in Chicago & N. W. R. Co. v. Commissioner of Internal Revenue, 7 Cir., 1940, 114 F.2d 882, 888. The expanded recognition of the close relationship between the warm heart and cool head of business is seen in now Int.Rev.Code of 1954, § 162(b), which disallows the section 162(a) "ordinary and necessary" business expense deduction "for any contribution or gift which would be allowable as a deduction under section 170 were it not for the percentage limitations, the dollar limitations, or the requirements as to the time of payment, set forth in such section." See discussion in Citizens & Southern Nat'l Bank of S. C. v. United States, W.D.S.C., 1965, 243 F.Supp. 900.

5. The School for Scandal, Act V, Sc. 1.