**SID RICHARDSON CARBON AND GAS-
OLINE CO., Plaintiff-Appellee,**

v.

**UNITED STATES of America,
Defendant-Appellant.**

No. 26957.

United States Court of Appeals
Fifth Circuit.

Sept. 19, 1969.

Eldon M. Mahon, U. S. Atty., Fort Worth, Tex., Gene A. Castleberry, Atty., Tax Div., U. S. Dept. of Justice, Fort Worth, Tex., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Martin T. Goldblum, Louis M. Kauder, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Harry C. Weeks, R. Gordon Appleman, Fort Worth, Tex., for plaintiff-appellee; Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel.

Before AINSWORTH and GODBOLD, Circuit Judges, and DAWKINS, District Judge.

GODBOLD, Circuit Judge:

This appeal is from a judgment of the District Court in favor of the taxpayer for a refund of income tax in the amount of $3,786.72 plus interest. The government appeals pursuant to 28 U.S.C. § 1291. The District Court opinion is reported at 291 F.Supp. 674 (N.D., Texas, 1968).

Prior to 1959 the taxpayer, a Texas corporation, was owned by Sid W. Richardson (75%) and Perry R. Bass, Richardson's nephew (25%). Following Richardson's death in 1959, his stock in the taxpayer was duly transferred, under the residuary clause in his will, to the Sid W. Richardson Foundation, a non-profit corporation which was tax-exempt under 26 U.S.C. § 501(c) (3). This transfer took place in 1962.

From its organization in 1947 throughout the period covered in this case, the Foundation conducted no charitable activity, such as a hospital, school, or any other enterprise within the definition of charity, but instead received contributions entirely from the Richardson and Bass families and disbursed practically all of the amounts contributed to it to actively operating charities selected by its contributors. The donees of the Foundation included some of the nation's most highly regarded scientific, religious and educational institutions.

Subsequent to the Foundation's receipt of 75% of the stock of taxpayer, taxpayer made a transfer of $100,000 to the Foundation. The parties stipulated, and the District Court provided in its pretrial order, that the only issue in the case was the characterization of the $100,000 transfer. The taxpayer contended that the transfer of funds was a charitable contribution to a tax-exempt organization and properly deductible as such. The government urged that it was in the nature of a dividend. The District Court upheld the taxpayer's contention.

A transfer of funds or property, without consideration, from a taxable corporation to its sole stockholder, where that stockholder is an organization exempt from federal income taxation under 26 U.S.C. § 501(c) (3), is a distribution constituting a dividend to the extent provided in 26 U.S.C. § 316(a) and cannot be

deducted by the taxable corporation under 26 U.S.C. § 170. Crosby Valve & Gage Co. v. Commissioner of Internal Revenue, 380 F.2d 146 (1st Cir. 1967); United States v. Knapp Bros. Shoe Manufacturing Corp., 384 F.2d 692 (1st Cir., 1967); Rev.Rul. 68–296.

The only evident differences between the present case and the cases decided by the First Circuit and the ruling by the Internal Revenue Service are the extent to which the exempt organization was interested in the taxable corporation and the manner in which the exempt organization became interested.

In *Crosby* and the Revenue Ruling taxpayer was owned 100% by the exempt organization. In *Knapp Bros.* the exempt organization was the beneficial owner of 100% of the taxable entity, although all of the stock therein was held by others. Here the Foundation held but 75% of the taxpayer's stock. This fact was one of those relied upon by the District Court in distinguishing *Crosby* and *Knapp Bros.*, 291 F.Supp. 674, 678. In the light of the other facts in this case, the difference cannot be deemed of controlling importance.

The Foundation had five directors: Perry R. Bass, Mr. Bass's wife, Mr. Bass's mother (who was also the sister of the late Sid W. Richardson), Sampson and Chappell. The taxpayer had four directors: Perry R. Bass, Sampson, Chappell and Andrews. Thus, the taxpayer was owned ¼ by Mr. Bass outright and ¾ by an organization which was under the sole control of taxpayer's directors and persons closely related to one of those directors. Though taxpayer was not owned 100% by the Foundation the conclusion is inescapable that any action taxpayer took was also an action taken by the persons who had the sole control of Foundation.

The legislative history of the feeder organization and unrelated business income sections of the Internal Revenue Code, 26 U.S.C. §§ 502, 511–515 shows the nature of the problem sought to be dealt with by those sections:

> The problem at which the tax on unrelated business income is directed here is primarily that of unfair competition. The tax-free status of these section 101 organizations enables them to use their profits tax-free to expand operations, while their competitors can expand only with the profits remaining after taxes. * * *

> Your committee's bill does not deny the exemption where the organizations are carrying on unrelated active business enterprises * * * but merely imposes the same tax on income derived therefrom as is borne by their competitors.[1]

A transfer to a charity controlling the corporate taxpayer reduces taxes on that corporation to precisely the same degree whether the transfer is made in good faith as a charitable contribution or for other motives.

■ The manner in which taxpayer's stock came into the hands of the exempt organization also was thought significant by the District Court. The taxpayers in *Knapp Bros.* and *Crosby* were created or acquired as "feeders" for the charities. The taxpayer here had a separate existence as a business before any part of its stock was owned by the Foundation, and was obtained involuntarily by the Foundation as part of an estate. 291 F.Supp. 674, 678. Neither the language nor the policy of the statute appears to support the contention that distributions from "feeders" are taxable when the "feeder" is bought or established for the purpose of feeding the charity but may be exempt when the ownership of the "feeder" is obtained involuntarily by the charity. The language of the Internal Revenue Code indicates that the mode

---

1. H.Rep. No. 2319, 81st Cong., 2d Sess., pp. 36–37. See also Note, The Macaroni Monopoly: The Developing Concept of Unrelated Business Income of Exempt Organizations, 81 Harv.L.Rev. 1280, 1281–82 (1968).

of acquisition is irrelevant in the matter of "feeder corporations":

> An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt under section 501 on the ground that all of its profits are payable to one or more organizations exempt under section 501 from taxation. * * * 26 U.S.C. § 502.

A company may be operated for the purpose of carrying on a trade or business no matter how acquired, and it is the operation, not the creation or acquisition, which is relevant for tax purposes. Furthermore, to accept the "involuntarily acquired" defense would be to create a simple loophole for a taxpayer wishing to make a tax-exempt profit-making business of a favorite charity. The taxpayer would only need to give the charity a business (or the stock thereof) and the charity would be entitled to the profits of the business tax-free.

We do not perceive any persuasive reason why the taxpayer in this case should receive treatment different from that given in *Crosby* and *Knapp Bros.*

Reversed.