TUBE BAR, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23172.    Promulgated December 26, 1950.

*Allen G. Gartner, Esq.*, and *Edward I. Sproull, C. P. A.*, for the petitioner.

*John A. Gilmore, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* The petitioner is contending that it is entitled to a deduction for an ordinary loss of $2,900 alleged to have been sustained in the sale of the Franklin Street property and fixtures, and a total of $13,500 as a deduction for legal expenses. The amount of the alleged loss is the difference of $1,950 between the consideration paid to Schubert and the selling price of the property, without the license, plus the selling commission of $300, and $650 for the fee paid to Hershenstein for legal services rendered incident to the purchase and sale. The $650 was added to the loss alleged, by amendment to conform to proof. The legal expenses consist of fees of $1,500 and $10,000 which were paid to Halpern and Milton, respectively, and $2,000 for services rendered by Hershenstein in connection with the license issued to petitioner.

The position of the respondent is that the alleged loss of $2,900 and the fee paid to Halpern, represent capital expenditures incurred to

acquire the license issued to petitioner; that the services of Milton were as a primary proposition rendered, in part, to the (a) old corporation, (b) petitioner's stockholders as individuals, and (c) in connection with the new lease and to the extent otherwise rendered to petitioner, for the acquisition of the license, and that the services of Hershenstein were rendered for the stockholders or in the acquisition of the license.

The parties do not differ on the amount of the alleged loss. Petitioner seeks to have us treat the purchase and sale as transactions having no relation to the license issued to it by transfer, whereas, respondent's view is that the dealings were merely incidental to the acquisition of the license, and accordingly, the amount should be regarded as the cost of the license, and renewal privileges thereunder, which he contends is a capital asset having an indeterminable life. The question should not be considered without the surrounding facts. So considered, more appears than an isolated sale of property.

The license issued the old corporation having been revoked, effective immediately, it was necessary to obtain a modification of the order or another license to resume business. A new license could not be obtained because the maximum number of licenses was then outstanding. After declining to reopen the revocation proceedings, Commissioner Driscoll agreed not to disapprove if the Board of Commissioners of the city of Jersey City authorized a license through the means of a transfer of an existing license. Transfers of licenses from person to person were not possible under the regulations without the approval of the Board of Commissioners of Jersey City. Halpern, after considerable effort, located a licensee who was willing to give up possession of his license in connection with the purchase of the premises in which he was doing business, and the fixtures used in his business. By that time Milton had received assurances that the Board of Commissioners would approve the transfer of an existing license, and later Hershenstein, at the suggestion of Milton, to make a better case before the Board of Commissioners, obtained agreements from licensees in the restricted area to refrain from objecting to the transfer.

No steps were taken to organize petitioner until arrangements had been made to acquire a license which could be made the subject of an application for transfer and until Milton had received assurances that the Board of Commissioners would approve a request for transfer. The license held by Schubert was acquired and while the application for transfer was pending before the Board of Commissioners, an agreement was entered into to sell the Franklin Street property and the fixtures.

Petitioner's intention at all times was to conduct a business at 12 Tube Concourse, where its predecessor had operated. A license being essential, petitioner was willing to purchase property not required in its contemplated business in order to obtain an existing license that

could be made the subject of an application for transfer. The license was its ultimate objective, and the acquisition of the real estate and chattels was merely incidental thereto. Under the evidence, a transfer of the license could be secured only by purchasing the real estate where it was being used. Obviously, here the property was obtained only in order to secure the license, and was a mere incident. The unimportance of the real estate and chattels is shown also by the sale thereof even before the transfer of the license was approved. It is evident that the purchase and sale of the property were mere steps of a single transaction to obtain a license to operate a liquor business.

The petitioner's income tax return did not claim the item as a loss, but set forth $2,250 (without the $650 attorneys' fees) as "license" under "other deductions," from which it is apparent that petitioner originally regarded the item not as the loss now contended for, but as cost of the license. We consider the first view the correct one. Moreover, the entire purchase, i. e., property and license, has never been disposed of, the license having been retained. The $4,950 paid to Schubert was not under the evidence allocated between property and license, so that no basis for the property alone appears from which to compute loss thereon even if otherwise there might be recognizable loss on the sale of the property.

We conclude and hold that the alleged loss of $2,900 constitutes part of the cost of the license obtained by transfer.

The fee charged by Halpern was for services rendered in locating a licensee who would agree to deliver possession of his license in connection with the purchase of the property in question. The amount thereof falls within the same classification as the fee charged by Hershenstein for legal services incident to the purchase and sale, and the sales commission, and, therefore, constitutes part of the cost of the license issued to petitioner.

We do not concur in the view of respondent that some part of the fee of Milton and $2,000 of the fee charged by Hershenstein were for services rendered to petitioner's stockholders. The basis for his contention is that, under the laws of New Jersey, no license could have been issued to petitioner without consideration of the qualifications of the stockholders to receive a license as individual applicants. The transfer was applied for by, and was issued to, petitioner, the real party in interest. The qualifications of its stockholders under the statute were only incidental to the fitness of the applicant to receive a license. The part their qualifications played in obtaining the license is not, in our opinion, sufficient to justify ignoring the corporate entity.

Aside from one or more conferences with Driscoll with the view of having him reopen the revocation proceedings, Milton had one conference in New York City to negotiate a new lease. His services

before Driscoll were, in part, for the benefit or the old corporation and the portion of his fee for the conference in New York City constitutes part of the cost of the new lease. The absence of any allocation in the evidence—Milton declined to allocate it—does not relieve us of the duty to make one the best we can. *Cohan* v. *Commissioner*, 39 Fed. (2d) 540. Accordingly, we hold that of his fee of $10,000, $3,000 was for services rendered to the old corporation and $500 in connection with the new lease. The remaining amount of $6,500, and the $2,000 fee charged by Hershenstein for services rendered by him, are chargeable as costs in acquiring the license. The question remains whether these amounts are ordinary expense or capital expenditure.

Petitioner's contention that the attorneys' fees are deductible as ordinary and necessary business expenses is based largely upon the theory that the license granted to it, including such renewal privileges as are incident thereto, is not, as respondent asserts, a capital asset.

In *Morris Nachman*, 12 T. C. 1204, we held that the purchase of a liquor license in the course of being issued by the city of Jacksonville, Florida, was an expenditure for a capital asset having an indeterminable life, and that except for the portion thereof allocable to the fee for the current year, none of the cost was deductible as a business expense. Petitioner seeks to distinguish the case upon the grounds that the petitioners there purchased nothing other than the license, instead of as here realty and chattels, and got a license with it, and that transfers from person to person are permitted in Florida and prohibited in New Jersey. Any distinction of facts in the cases is not material.

The ordinance of the city of Jacksonville did not require that preference be given to holders of licenses but it was the practice of the municipal license inspector, acting within his discretion, to grant such preferences. It was the custom there to recognize transfers of licenses, provided the assignment was evidenced by a written instrument. The issuance of all licenses was within the discretion of the inspector. Here, instead of a purchase of realty and chattels, in connection with which a license was received, there was, in substance, a purchase of the license, with the other property incidental thereto. There is no evidence of a formal transfer of the license by Schubert but he agreed to execute such instruments as were necessary to assign it and subsequently requested the Board of Commissioners to transfer his license to petitioner. The specific action of the Board of Commissioners was approval of Schubert's request rather than granting the application of petitioner.

The holder of a license in Jacksonville had a reasonable expectation that requests for renewals would be granted. It was the policy of the Board of Commissioners in Jersey City to grant renewals in the absence of law violations. Testimony of two clerks connected with the

issuance of such renewals was very positive in that regard. That petitioner's officers were aware of the custom is shown by the renewal licenses the old corporation received until its license was revoked and the renewals since 1944.

Petitioner points out that in New Jersey a licensee has no vested right in renewals. The case of *Zicherman* v. *Driscoll*, 133 N. J. L. 586, 45 Atl. (2d) 620, so holds. No absolute right to renewal licenses existed in Jacksonville, and none is required in situations like the one here involved. It is obvious that petitioner incurred the expense, not to obtain a license merely to operate during the remainder of the year for which the license was granted, but also for the right to apply for renewals. Under the policy long followed by the Board of Commissioners in authorizing renewals, only the behavior of petitioner's officers under the law stood between petitioner and the honoring of renewal requests in the future.

Petitioner, as in the case of the petitioners in the *Nachman* case, acquired a capital asset. It follows that the cost thereof is not deductible as an ordinary and necessary business expense.

As to the fees to Milton, in addition to his contention stated above, which respondent on brief calls his "principal contention," he also states specifically as an alternative view that such fees were in fact paid to obtain political influence. Having above concurred in the principal contention we find it unnecessary to pass upon the alternative.

*Decision will be entered under Rule 50.*