THE BROOK, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brook, Inc. v. Commissioner
Docket No. 9116-82.
United States Tax Court
T.C. Memo 1985-462; 1985 Tax Ct. Memo LEXIS 164; 50 T.C.M. (CCH) 959; T.C.M. (RIA) 85462; September 4, 1985. Charles T. Crawford, for the petitioner. Elizabeth M. Fasciana, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined the following income tax deficiencies against The Brook, Inc. (hereinafter "petitioner") for its tax years ending August 31, 1979 and August 31, 1980: Tax year ended
Amount
August 31, 1979
$2,072
August 31, 1980
2,931
The only issue for decision is whether petitioner, a private social club exempt from income tax under section 501(c)(7), [1] can deduct in the years in issue its excess losses from certain sales of food and beverages to nonmembers in computing its unrelated business taxable income. *167 FINDINGS OF FACT Almost all of the facts have been stipulated, and such facts together with accompanying exhibits are incorporated herein by this reference. At the time its petition was filed, petitioner's principal place of business was in New York City, New York. Petitioner was organized as a private club in 1903, and is incorporated under the laws of the State of New York. An individual may become a member of petitioner by invitation only, and petitioner is not open to the general public. Petitioner's facilities consist of a five-story clubhouse, one bar, three dining rooms, ten bedrooms, one kitchen, two pantries and an office. Petitioner provides the following services: (1) Breakfast, luncheon and dinner; (2) overnight accommodations; (3) reservation and message switchboard; and (4) private dinner parties. Petitioner is currently, and was during the years in issue, an organization described in section 501(c)(7) as a social club "organized for pleasure, recreation, and other nonprofitable purposes * * *." Petitioner was granted exempt status under section 501(a) in June of 1942, and maintained such status during the years in issue. For each such year, petitioner *168 timely filed Forms 990-T, exempt organization business income tax returns. During its fiscal years ended August 31, 1979, and August 31, 1980, petitioner received from two sources unrelated business taxable income within the meaning of section 512(a)(3)(A), viz, investments and sales of food and beverages to nonmembers. Petitioner incurred net losses from the nonmember food and beverage activities during such fiscal years in the respective amounts of $38,477 and $44,383. Whenever the club facilities were used by nonmembers, the sponsoring member was present. Petitioner's management makes no distinction between member and nonmember functions, and only makes such classifications when forms filed by its members are reviewed at the end of each fiscal year. Petitioner charges the same price for food and beverages sold to members and nonmembers. Revenues from such sales are insufficient to recover the full costs thereof, and petitioner did not have the intention that they would be. The percentages of petitioner's gross receipts attributable to nonmember business during its fiscal years 1979 and 1980, were 5.99 percent and 6.3 percent, respectively. An allocable portion of petitioner's *169 overhead costs was properly attributable to and directly connected with the generation of nonmember income. Petitioner has consistently deducted such an allocable portion of overhead from nonmember income for purposes of computing unrelated business taxable income. For its taxable years ending August 31, 1973, through 1983, inclusive, petitioner reported losses for tax purposes from the sale of food and beverages to nonmembers, after subtracting both direct and indirect expenses allocable to those activities. Petitioner's management conducted its overall activities with the intention that total receipts from all revenue sources would exceed total expenditures. For the periods ending August 31, 1979, and August 31, 1980, petitioner had net investment income in the respective amounts of $13,110 and $18,841. In computing its unrelated business taxable income for its 1979 and 1980 tax years, petitioner deducted losses incurred from sales of food and beverages to nonmembers from its investment income, as follows: Nonmember food and beverage activities
Investment
Unrelated
income
business
Year
Gross receipts
Cost of goods
Losses
taxable
sold and
income
operations
1979
$48,677
$87,154
$ (38,477)
$13,110
$ (25,867)
1980
55,064
99,447
(44,383)
18,841
(25,542)
*170 OPINION Petitioner is a tax-exempt social club pursuant to sections 501(a) and 501(c)(7). [2] Pursuant to section 511(a), an income tax at general corporate rates is imposed on the "unrelated business taxable income" of any such organization. The phrase "unrelated business taxable income" is defined generally in section 512(a)(1), as follows: (1) GENERAL RULE.--Except as otherwise provided in this subsection, the term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the modifications provided in subsection (b). [Emphasis added.] For taxable years beginning before January 1, 1970, social *171 clubs were not subject to the tax on unrelated business income under section 511. Thus, unless its exemption was revoked, such clubs were not taxable on their income. See Ye Mystic Krewe of Gasparilla v. Commissioner,80 T.C. 755, 762 (1983) (hereinafter Krewe), and cases cited therein. For taxable years beginning after December 31, 1969, however, the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, subjected social clubs to a tax on unrelated business income. This provision resulted from a proposal by the Treasury Department, which explained the proposal, in part, as follows: Thus, under the proposal, all income, other than that from members in exchange for exempt function facilities, would be included in gross income, whether or not the activities generating the income were sufficient to meet the requirements of a "trade or business regularly carried on" generally applicable under the unrelated business income tax. Income from an investment [footnote omitted] would be subject to the tax whether or not the activities engaged in by the social club in generating that income were sufficient to meet the "trade or business" test of the unrelated business *172 income tax. * * * The computation of income subject to the tax would be similar in most respects to the computation presently applicable under the unrelated business income tax in general. However, consistent with the elimination of the "trade or business regularly carried on" tests, deductions would be allowable if directly connected with an activity generating income subject to tax, rather than only if directly connected with an unrelated trade or business regularly carried on. * * * [Technical Explanation of Treasury Tax Reform Proposals, Hearings on the Subject of Tax Reform before the Comm. on Ways and Means, 91st Cong., 1st Sess., part 14, 5050, 5139-5141 (April 22, 1969); emphasis included.] In accordance with the foregoing proposals, section 512(a)(3)(A) was added by the 1969 Act, and provides for a special rule applicable, inter alia, to section 501(c)(7) social clubs, as follows: (A) GENERAL RULE.--In the case of an organization described in paragraph (7) * * * of section 501(c), the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected *173 with the production of the gross income (excluding exempt function income), both computed with the modifications provided in paragraphs (6), (10), (11) and (12) of subsection (b). * * * [Emphasis added.] In the instant case, petitioner reported food and beverage expenses from nonmember activities in its 1979 and 1980 tax years in the respective amounts of $87,154 and $99,447, against which it offset food and beverage income from such activities in those years in the respective amounts of $48,677 and $55,064. For each such year, petitioner then applied the resulting losses from nonmember food and beverage activities, in the respective amounts of $38,477 and $44,383, against certain investment income, yielding unrelated business losses of $25,367 and $25,542, respectively. Respondent disallowed the foregoing nonmember food and beverage expenses, but only to the extent they exceeded nonmember food and beverage income (i.e., to the extent they offset investment income). In support of this determination, respondent relies solely on the following two alternative theories: (1) The subject expenses were not "deductions allowed by this chapter" within the meaning of section 512(a)(3)(A), *174 since the only provision of chapter 1 under which they could be deducted is section 162(a), and they are not deductible under that section because, viewing petitioner's nonmember sales of food and beverages apart from its other activities, such sales were not conducted with a profit motive and did not constitute a trade or business; [3] and (2) even if petitioner's nonmember sales of food and beverages constituted a trade or business, the excess losses from such activity should not reduce investment income for purposes of computing petitioner's unrelated business taxable income. Since we believe that Krewe applies as to respondent's second point, there is no need for us to reach the manifold issues suggested by respondent's first alternative argument. [4]
*175 In Krewe, the taxpayer, which was tax exempt under the predecessor of section 501(c)(7), was formed to hold certain annual social events, including a reenactment of an invasion of the City of Tampa, Florida by a replica of an 18th century pirate vessel, and a subsequent parade. During the post-1969 years in issue, the taxpayer expended certain sums on the staged invasion and the parade, but also received income net of expenses resulting from its award by the city of concession rights along the parade route, as well as interest income relative to a "special ship fund" consisting of special assessments on its new members. On these facts, we first upheld respondent's determination that the concession and interest income was "unrelated business taxable income" within the meaning of section 512(a)(3)(A), even though the invasion and parade did not constitute a trade or business within the meaning of section 512(a)(1). The second issue presented in Krewe was whether the taxpayer was entitled to offset its invasion and parade expenses against its concession income. After reviewing the language and purpose of section 512(a)(3), we held that the invasion and parade activities *176 were independent of the concession activities, and that the expenses in issue were therefore not "directly connected with the production" of the income involved, and therefore could not be applied against it under section 512(a)(3)(A). 80 T.C. at 765-767. In the instant case, petitioner similarly seeks to net the excess expenses from one activity (i.e., nonmember food and beverage) against the income from another activity (i.e., investments). No direct nexus between such activities having been demonstrated by petitioner on this record, [5] we hold that Krewe controls, [6] and that the excess expenses may not serve to offset independent investment income during the years in issue. [7]
*177 As in Krewe, we think that this holding comports with the purpose of section 512(a)(3), which was to tax income, and particularly investment income, which a social club receives from nonmember sources. [8] If the taxpayer's position were adopted, its investment income would wholly avoid taxation, and could be used to subsidize the food and beverage activities without being subject to taxation. See Krewe,80 T.C. at 767. *178 Petitioner argues that the foregoing result contravenes the intent of section 277 that a club should not pay less tax as a taxable corporation than it would as an exempt social club. It is sufficient to note that section 277 has no application to the instant case, which involves a concededly tax-exempt social club under section 501(c)(7), and that our holding comports fully with the purpose of the provision in issue, section 512(a)(3). Other arguments raised by petitioner go essentially to respondent's first alternative argument, supra, and it will accordingly be unnecessary for us to address them here. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Pursuant to sec. 501(c)(7), the following are exempt from taxation under sec. 501(a): Clubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder.↩
3. In light of this primary theory for disallowance, it is anomalous that respondent limited his disallowance to the excess of expenses over income attributable to nonmember food and beverage activities, and the record fails to disclose any explanation for such limitation.↩
4. Without expressing any opinion as to its merits, we note that this question has been decided adversely to the taxpayer in the Cleveland Athletic Club v. United States,588 F. Supp. 1305 (N.D. Ohio 1984) (it is not clear whether respondent limited his disallowance to the excess of nonmember food and beverage expenses over income in that case). On the other hand, we further note that, while not directly confronted with the issue, this Court apparently accepted the notion that the expenses of a concededly non-trade or business activity (staging of an invasion and parade by a sec. 501(c)(7) organization) could offset gross income as long as they were "directly connected with the production" of the income within the meaning of sec. 512(a)(3)(A). Ye Mystic Krewe of Gasparilla v. Commissioner,80 T.C. 755, 765↩ (1983). See also Technical Explanation of Treasury Tax Reform Proposals, Hearings on the Subject of Tax Reform before the Comm. on Ways and Means, 91st Cong., 1st Sess., part 14, 5050 (April 22, 1969) (as excerpted in the text).
5. Indeed, while petitioner makes allegations in its petition and on brief concerning the nature of the nonmember food and beverage activities in issue, there is nothing in the record to support such allegations, leaving the nature of such activities unexplained.↩
6. See also Adirondack League Club v. Commissioner,55 T.C. 796 (1971), affd. per curiam 458 F.2d 506↩ (2d Cir. 1972). 7. In so holding, we offer no opinion as to the possibility of petitioner's carrying over or back its net operating losses from nonmember food and beverage activities, since the issue has not been presented by either party. Cf. secs. 512 (a)(3)(A) and 512(b)(6); sec. 1.512(b)-1(e), Income Tax Regs.↩ We note, however, that in view of the stipulated fact that petitioner incurred nonmember food and beverage losses net of direct and indirect expenses allocable to such activities for its taxable years 1973 through 1983, inclusive, it seems unlikely that it could have utilized any such loss carryovers or carrybacks to which it might have been entitled.
8. In discussing the application of the unrelated business tax to social clubs, the Ways and Means Committee report provided, in part: The bill also imposes a tax on investment income of organizations which are exempt on the grounds of mutuality or common membership.Social clubs, for example, are operated for the benefit of members and any profit derived from rendering the services to members is used by the club for the benefit of the members. Therefore, where a social club has income from interest, dividends, rents, royalties, etc., this income reduces the members' costs below the actual cost of providing the personal facilities made available by the organization. Because of this, the bill would tax the social clubs and these other membership organizations on all income other than that derived from rendering services to the members. This income would be treated and taxed as business income. [H. Rept. 91-413 (Part 1) (1969), 1969-3 C.B. 200, 231; emphasis added.] The Senate Finance Committee report also stated: Since the tax exemption for social clubs and other groups is designed to allow individuals to join together to provide recreational or social facilities or other benefits on a mutual basis, without tax consequences, the tax exemption operates properly only when the sources of income of the organization are limited to receipts from the membership. Under such circumstances, the individual is in substantially the same position as if he had spent his income on pleasure or recreation (or other benefits) without the intervening separate organization. However, where the organization receives income from sources outside the membership, such as income from investments * * *, upon which no tax is paid, the membership receives a benefit not contemplated by the exemption in that untaxed dollars can be used by the organization to provide pleasure or recreation (or other benefits to its membership. * * * The extension of the exemption to such investment income is, therefore, a distortion of its purpose. [S. Rept. 91-552 (1969), 1969-3 C.B. 423↩, 469-470; emphasis added.] See also Technical Explanation of Treasury Tax Reform Proposals, (as excerpted in the text).