NUNZIO LOMBARDO and LUCINDA LOMBARDO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lombardo v. Commissioner
Docket Nos. 20681-83, 20682-83.
United States Tax Court
T.C. Memo 1985-552; 1985 Tax Ct. Memo LEXIS 76; 50 T.C.M. (CCH) 1374; T.C.M. (RIA) 85552; November 6, 1985. Nunzio Lombardo, pro se. Sergio Garcia-Pages, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, *77 Judge: The Commissioner determined deficiencies in petitioners' income tax as follows: Year
Deficiency
1979
$41,258
1980
25,715
The principal issue before us is the correctness of the Commissioner's disallowance of deductions in the amounts of $84,100 and $49,500 in respect of alleged charitable contributions claimed in petitioners' income tax returns for 1979 and 1980, respectively. FINDINGS OF FACT The parties have filed a stipulation of facts, which, together with accompanying exhibits, is incorporated herein by this reference. Petitioners Nunzio Lombardo (petitioner) and Lucinda Lombardo are husband and wife; they resided in North Miami Beach, Florida, at the time they filed their petition herein. They timely filed joint Federal income tax returns for both 1979 and 1980. In late 1978 petitioner and four other persons purchased 19 acres of land located in Scranton, Hyde County, North Carolina (the property), for $25,000 cash. Petitioner and his four associates constructed roads into the property; built a dock, bulkheads, and storage shed thereon; and installed a furnished doublewide trailer on the property. On January 14, 1979, the State Bureau *78 of Investigation for North Carolina raided the property, and seized 14 tons of marijuana, $148,000 in currency, a boat, rubber rafts, motor vehicles, the land and its improvements, and various books and records. Petitioner was arrested at that time. On August 13, 1979, petitioner and the four other persons pleaded guilty to the crime of felonious sale and delivery of marijuana. As a result of his guilty plea, petitioner was placed on probation for a period of five years. The Probation Judgment, dated August 13, 1979, sentenced petitioner to serve five years in prison, but then suspended that sentence, placing petitioner on supervised probation for five years instead. This probation could be revoked at any time during the probation period for a violation of any of some 23 specifically enumerated conditions. Among those conditions was the payment of a $5,000 fine and $50 court costs. Of particular relevance in the present case are the further conditions (t) that "in compliance with the conditions of his plea bargain agreement [petitioner] will contribute to The Hyde County School Fund the sum of $145,000.00", and (u) that he "will convey" to the Hyde County Board of Education *79 his interest in the foregoing 19 acres of real estate together with improvements and the mobile home located thereon. On the respective Schedules C of petitioners' 1979 and 1980 income tax returns income was reported from "Business or Profession" in the rounded amounts of $175,000 and $98,000, without any supporting detail. In response to the question on each Schedule C calling for identification of the taxpayer's "[m]ain business activity" there was merely a 5th Amendment plea. On the 1979 return the only itemized deduction was a claimed cash contribution to "Hyde Cnty Board of Educ" in the amount of $87,500, which, after subtracting the $3,400 zero bracket amount, left a net deduction in the amount of $84,100. On the 1980 return the itemized deductions included a claimed cash contribution of $49,500 to "N. Carol Hyde County Board of Ed." [1]
In his notice of deficiency, dated April 15, 1983, the Commissioner disallowed the foregoing itemized deductions claimed as charitable contributions. OPINION The only matter before us for decision is the deductibility of *80 the charitable "contributions" made by petitioner in fulfillment of an obligation under the Probation Judgment which specifically required "compliance with the conditions of [petitioner's] plea bargain agreement". [2] The record is fuzzy in respect of certain matters relating to this issue. Since the deductions in controversy on both the 1979 and 1980 returns were claimed as cash contributions, it would seem that they were made pursuant to condition (t) of the Probate Judgment which called for a contribution of $145,000, obviously to be paid out of the cash seized at the raid. It would also seem that there was but a single contribution -- made in 1979 --, and that the amounts claimed for 1979 and 1980 represented merely the maximum amount available for deduction in each of those years, with the 1980 deduction being a carryover from the excess remaining after the 1979 deduction. Further, condition (t) speaks of a contribution to "The Hyde County School Fund", whereas condition (u) refers to a conveyance to "The Hyde County Board of Education". We can't tell whether these two terms were used interchangeably, or, if not, whether petitioners intended to designate the former in the *81 1979 and 1980 returns notwithstanding that the language used therein appears to refer to the latter. In any event, however, it is clear to us -- and is undisputed -- that the "contribution" or "contributions" claimed on the returns were in fact made under the compulsion of the Probation Judgment. *82 The plea bargain agreement is not in the record. Petitioner failed to produce it in response to a discovery request and even in response to an order of this Court requiring him to comply with that request. His muddled excuse for failing to do so was thoroughly unsatisfactory. His failure in this respect gives us particular justification for drawing any reasonable adverse inference against him as to the contents of that agreement wholly apart from our usual practice of resolving factual matters against a party having the burden of proof who fails to present evidence relating to such matters. Moreover, even on the scanty record before us, we think it clear that the central and dominant objective of petitioner in accepting the plea bargain agreement was to avoid being sent to prison. His "contributions" pursuant to the plea bargain agreement, as incorporated by the sentencing judge in the Probation Judgment, were nothing more than part of the consideration given by him to escape incarceration. We so find as a fact. In the circumstances, petitioners' "contributions" made under the compulsion of the plea bargain agreement, as incorporated in the Probation Judgment, could hardly *83 qualify for deduction as "charitable contributions" within section 170(c)(1), I.R.C. 1954. It has been firmly settled that "[i]f a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift" that may be classified as a charitable contribution. DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962). This concept has been followed in a considerable number of cases involving a wide variety of factual situations. See, e.g., Stubbs v. United States,428 F.2d 885 (9th Cir. 1970), and Sutton v. Commissioner,57 T.C. 239 (1971) (conveyance of land and easement in land, respectively, to City to facilitate approval of favorable zoning); Perlmutter v. Commissioner,45 T.C. 311 (1965) (transfer of land to school district in order to avoid difficulty in obtaining approval of development plans); Transamerica Corp. v. United States,254 F. Supp. 504 (N.D. Cal. 1966), *84 affd. 392 F.2d 522 (9th Cir. 1968), and Louisville and Nashville Railroad Co. v. Commissioner,66 T.C. 962 (1973), affd., revd., and remanded in part, 641 F.2d 435 (6th Cir. 1981) (transfer of land and easement, respectively, to City with the understanding that the City would improve the land to the benefit of the taxpayer); Sims v. Commissioner,72 T.C. 996 (1979) (mandatory contributions to a presumably tax exempt state Retirement Fund in exchange for retirement benefits); Rainier Cos., Inc. v. Commissioner,61 T.C. 68 (1973) ("donation" of stadium to City of Seattle to induce City to buy land on which stadium was situated); Grinslade v. Commissioner,59 T.C. 566 (1973) (conveyance of land to Metropolitan Transit Authority after bargaining for and then receiving in exchange for the land the following: cash, a zoning variance, and dismissal of condemnation suits); Wolfe v. Commissioner,54 T.C. 1707 (1970) (cash transfer to village made so that a water and sewer system would be available to taxpayer and would increase the value of taxpayer's property); McLaughlin v. Commissioner,51 T.C. 233 (1968), *85 and DeJong v. Commissioner,36 T.C. 896 (1961), affd. 309 F.2d 373 (9th Cir. 1962) (cash payments to parochial schools, to the extent they represented tuition, made to secure enrollment of taxpayers' children as students at the schools); Seed v. Commissioner,57 T.C. 265 (1971) (payment of $4,000 to the Sports Committee of the People-to-People Program to cover the costs involved in the taxpayer's participation in a golf tour of Europe). It would strain our credulity to the breaking point to conclude that petitioner's contributions proceeded even remotely from a charitable impulse. What we have here is a clear case of a "gift" for a quid pro quo. In short, petitioner was faced with the unhappy choice: prison or "gift". He chose the latter. His "gift" was merely a transfer in exchange for an expectation of freedom from prison. We need not belabor the point further. Petitioner made no charitable contribution that qualifies for deduction. [3]
*86 The facts of this case suggest an intriguing question as to whether the trial court in the criminal case went beyond its powers in adopting a requirement in the plea bargain agreement that petitioner make a "charitable" contribution of $145,000. It would appear that under North Carolina law, as alleged in the petition, the maximum fine that the court could impose was $5,000, see N.C. Gen. Stat. sec. 90-95(b)(2) (1981), and that there might therefore be some question (one that we have not explored) whether it could in effect exact a further payment of $145,000 to an instrumentality or subdivision of the state. However, regardless of whether the trial court exceeded its power in this connection under North Carolina law, the blunt fact is that it did embody such an order in its Probation Judgment, and petitioners' compliance therewith certainly did not constitute a deductible charitable contribution within the meaning of section 170, I.R.C. 1954. Decision will be entered for the respondent.
Footnotes
1. Other itemized deductions claimed, for taxes, in the amount of $5,048 for 1980 are not in controversy.↩
2. A minor part of the deficiency for 1979 was the Commissioner's inclusion of $241 in petitioners' income as unreported interest income for that year. The Commissioner's determination in this respect was not challenged in the petition, and must accordingly be deemed to have been conceded. Rule 34(b)(4), Tax Court Rules of Practice and Procedure.
The petition did raise a statute of limitations issue for 1979 on the ground that the deficiency notice was allegedly mailed April 16, 1983, one day after the period of limitations had expired. The Commissioner's Answer alleged that the deficiency notice was timely mailed on April 15, 1983, the date that the notice in fact bears. Petitioners, upon whom the burden of proof rests, produced no evidence to establish untimely mailing, and we must accordingly decide this point against them, or, at the very least, deem it to have been abandoned by them.↩
3. Petitioners have raised other issues in their petition: that the payment of $145,000 and other alleged payments made for legal expenses of petitioner's criminal defense were deductible as ordinary and necessary business expenses under section 162. However, these points were not presented to the Court at trial or otherwise, apart from being raised in the petition, and must accordingly be deemed to have been abandoned by them. The petition also asked for an award of court costs and legal fees under section 7430, I.R.C. 1954. Apart from the fact that petitioners have not substantially prevailed with respect to the amount in controversy or the issues presented, as required by section 7430(a) and (c)(2)(A)(ii), the matter in any event is not properly before us at this time. See Rule 231(a)(2)(i), Tax Court Rules of Practice and Procedure.↩