THE BROOK, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brook, Inc. v. Commissioner
Docket No. 9116-82.
United States Tax Court
T.C. Memo 1985-614; 1985 Tax Ct. Memo LEXIS 18; 51 T.C.M. (CCH) 133; T.C.M. (RIA) 85614; December 17, 1985. Charles T. Crawford, for the petitioner. Elizabeth M. Fasciana, for the respondent. KORNER
SUPPLEMENTAL MEMORANDUM OPINION KORNER, Judge: On September 4, 1985, the Court released its Memorandum Findings of Fact and Opinion in this case, T.C. Memo. 1985-462, and decision was entered in accordance therewith on the same day. In that earlier opinion, we held that petitioner, a social club exempt under the provisions of section 501(c)(7), [1] was not entitled to offset the net losses which it incurred in providing food and beverage service to nonmembers against the net income which it had from investments, for the purpose of computing its unrelated business taxable income under the provisions of section 512(a)(3), as determined by respondent. Thereafter, petitioner timely filed a motion under Rule 161 to reconsider our opinion, and a further motion under under Rule 162 to vacate the decision previously entered, and respondent filed an opposition to both motions. We *20 consider both motions together.
In its motions, petitioner continues to urge that the excess of its expenses over income with respect to nonmember food and beverage service can properly be aggregated with its net income from investments so as to arrive at a net total of unrelated business taxable income within the meaning of section 512(a)(3). In making this argument, petitioner relies upon its interpretation of respondent's proposed regulation section 1.512(a)-3, 36 Fed. Reg. 8808 (1971). Petitioner further urges that, contrary to what we said in our first opinion, this case is not controlled by Ye Mystic Krewe of Gasparilla v. Commissioner,80 T.C. 755 (1983). In Krewe, petitioner urges, the expenses in question - the cost of staging a mock invasion and parade - were expenses of an exempt function of the taxpayer, rather than a nonexempt function. The Court's holding in Krewe that such expenses could not be offset against nonexempt *21 function income, from concession stands and the like, therefore provides, says petitioner, no precedent for our holding in the instant case that the excess expenses from one nonexempt activity cannot be offset against the income from another unrelated nonexempt activity. In his opposition to petitioner's motions, respondent agrees in part with petitioner's position, in that respondent agrees that all the allowable expenses of one nonexempt function activity should be brought into hotchpot and should be allowable against any and all other unrelated business taxable income, from whatever source. Respondent urges, however, that such items of expense are allowable as deductions only where the nonexempt function activity in which the expenses are incurred constitutes the carrying on of a trade or business within the meaning of section 162. Where that is not the case, respondent argues, no such expenses are allowable at all as deductions in arriving at unrelated business taxable income, and since petitioner in the instant case concededly did not operate its food and beverage service with the purpose of making a profit, there was therefore no trade or business with respect to this *22 activity, and thus no allowable deductions with respect to such activity. We have examined the arguments of both sides but, since we disagree with them, we adhere to our original opinion. First, with regard to the precedential weight of Krewe in the instant situation: it is not entirely clear whether this Court, in Krewe, considered the staging of the mock invasion and parade by the taxpayer to be an exempt function of the taxpayer club, directly related to its social and exempt purposes, within the meaning of section 501(c)(7), or whether it considered such activities to be unrelated to its exempt function, and therefore outside the scope of the exemption. Although the Court's findings of fact indicated that members of the taxpayer club were heavily involved in the invasion and subsequent parade, it seems reasonably clear that such participation was not exclusive to club members, and that there was significant participation by nonmembers also. [2] In either case, however, the holding of the Court was clear - that only the expenses directly connected to the production of income from an unrelated activity could be offset against the income from such activity. As we said *23 in Krewe,80 T.C. at 767: Moreover, the adoption of the interpretation urged by the Krewe would frustrate the purpose of section 512(a)(3). The purpose of that provision is to tax the income which a social club receives from nonmember sources; thus, such income cannot be used to subsidize the activities of the members without being subject to taxation. If the position of the Krewe were adopted, the concession income would wholly avoid taxation. Such income could be used to subsidize the staging of the invasion and parade without being subjected to taxation. To carry out the purpose of section 512(a)(3), the production of the concession income must be viewed as a separate activity, and in determining the amount subjected to taxation, only the expenses directly connected with the production of such income are deductible. Hence, we hold that the Krewe is not entitled to deduct the expenses of staging the invasion and parade. *24 The above statement fits the facts in the instant case just as well as it did the facts presented in Krewe. The prices which petitioner charged for food and beverage service to its members were the same as prices charged to nonmembers. As conceded by petitioner, such prices were not intended to produce a profit, and in fact they did not. To the extent that the excess expenses resulting from nonmember food and beverage service, a nonexempt activity, were applied to reduce the taxable income from petitioner's investments - another and unrelated nonexempt activity - such investment income was shielded from taxation and was available to subsidize the operations of petitioner for the benefit of its membership. The legislative history of section 512(a)(3) makes it clear that this was precisely the result which Congress intended to prevent. [3] Thus, we think the principle enunciated in Krewe is applicable to the facts of the instant case and controls the result, as we have indicated. In arguing that the excess *25 of expenses over income with respect to petitioner's nonmember food and beverage operations can properly be used to reduce its unrelated business taxable income from its investments (an otherwise unrelated activity), petitioner relies on the language of respondent's proposed regulation section 1.512(a)-3(b)(3), which provides: (3) Income from more than one source. In the case of a social club or an employees' association which derives gross income (excluding exempt function income) from two or more sources, its unrelated business taxable income is computed by aggregating its gross income from all such sources and by aggregating its deductions allowed with respect to such gross income. The same proposed regulation, section 1.512(a)-3(b)(2)(i), however, provides, in part: (2) Directly connected -- (i) In general. An item of deduction otherwise allowable under chapter 1 of the Code will be allowed as a deduction for purposes of computing unrelated business taxable income only if it is both directly connected with the income and incurred in the production of such income. * * * [Emphasis supplied.] We think that the words which we have emphasized in the last of the *26 above quotations are significant and remove what might otherwise be considered a contradiction, or at least an ambiguity in the proposed regulations. The addition of the emphasized words means to us that what was intended was that expenses directly connected to the production of unrelated business taxable income are to be allowed as deductions against such income only, and not against any other income to which such expenses are not directly related. In other words, expenses are to be confined as deductions to the particular income to which they relate, and any excess thereof may not be used to offset other unrelated business taxable income from another source. The totals of the net income from each such source are then to be aggregated in arriving at the total amount of unrelated business taxable income, and we think this interpretation, in turn, harmonizes with the language of the statute, section 512(a)(3)(A), which decrees that "the term 'unrelated business taxable income' means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income) *27 * * *." Respondent, while agreeing with petitioner's interpretation of the proposed regulation, as above, then attempts to scuttle petitioner's whole argument by urging that none of petitioner's expenses in connection with the nonmember food and beverage service are allowable, since such nonmember food and beverage service was concededly not a trade or business, and since the only deductions which are allowable would be those which qualify under section 162, applicable only to deductions incurred in the conduct of a trade or business. Like petitioner, respondent relies on his proposed regulation, and specifically proposed regulation section 1.512(a)-3(b)(1), which reads, in pertinent part: To be deductible in computing unrelated business taxable income, expenses, depreciation, and similar items not only must qualify as deductions under chapter 1 of the Code, but also must be directly connected with production of gross income (excluding exempt function income). We think that respondent's interpretation is both unreasonable and unwarranted by the statute. Section 512(a)(3) itself (the pertinent part of which we have quoted above) is clear that Congress intended to include within *28 the rubric of "unrelated business taxable income" all income which a section 501(c)(7) organization receives, other than exempt function income, and from whatever source derived, whether or not the conduct of a trade or business is involved. The legislative history of the Act, quoted in greater detail in our prior opinion herein, makes that perfectly clear, as does respondent's proposed regulation itself, section 1.512(a)-3(a), which provides in pertinent part: In general, section 512(a)(3) is designed to impose a tax on all income from nonmember sources. * * * To accomplish this result, subparagraph (A) of section 512(a)(3) provides that the unrelated business taxable income of a social club or an employees' association includes all gross income, less all allowable deductions directly connected with the production of that income, except that gross income for this purpose does not include any "exempt function income. " * * * To adopt respondent's construction in this case is to impute to Congress an intention to tax a social club's nonmember source income, regardless of whether a trade or business was being carried on, but then to allow directly related expenses as deductions *29 against such income only if a trade or business was being carried on in such activity. We will not impute any such capricious intention to Congress. Rather, we think that a reasonable reading of section 512(a)(3)(A) is that Congress, having decreed that a social club's income from all sources (other than member sources) was to be treated as business income, then intended that the deductions allowed by chapter 1 with respect to business income should be allowable as deductions against the income produced by each unrelated activity, whether in fact such activity constituted the carrying on of a business or not. We note further, as we did in our original opinion herein, that respondent's position here is inconsistent with his own statutory notice of deficiency, in which respondent allowed to petitioner all the expenses directly connected with the production of the gross income from nonmember food and beverage service, to the point of eliminating such unrelated business taxable income entirely, but refused to allow only the excess of such expenditures over income as a further offset to petitioner's investment income. *30 Although he has argued as indicated herein, both in his briefs and in his subsequent opposition to petitioner's motions for reconsideration, respondent has never sought to amend his answer so as to claim a larger deficiency, which would be implicit in his present position. Quite aside from the fact that we think respondent's position has no merit, as we have indicated, we would not consider it here, since we think that, by raising this point for the first time on brief, rather than in his pleadings, respondent has raised a new matter which would, even if properly pleaded, shift the burden of proof to him on such issue. Achiro v. Commissioner,77 T.C. 881, 890 (1981); Tauber v. Commissioner,24 T.C. 179, 185 (1955); Rule 142(a). This Court will not consider issues not properly pleaded. Markwardt v. Commissioner,64 T.C. 989, 997 (1975); Rule 36(b). Finally, and with respect to the arguments of both parties, to the extent that each side relies on respondent's proposed regulations under section 512(a)(3), we note that we have held more than once that proposed regulations carry no more weight than a position or argument advanced on *31 brief. See Freesen v. Commissioner,84 T.C. 920, 939 (1985) and cases cited therein. The instant proposed regulation was issued in May 1971, over 14 years ago, and has never been promulgated in final form. We would hesitate to accuse respondent, or the Treasury, of negligence in delaying the promulgation of final regulations in this area, which would be of considerable assistance to taxpayers, such as the instant petitioner, in governing their affairs under a new statute, where there is no guidance from prior authority.[4] We can only infer that respondent and/or the Treasury have some continuing uncertainty of the correctness of their interpretation of section 512(a)(3), as expressed in the proposed regulation, and have as yet been unable to resolve the problem. For all the above reasons, we adhere to the position in our prior opinion. It follows that petitioner's motions to reconsider that prior opinion, as well as to vacate our decision, must be denied. Appropriate orders will be entered.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Note, for example, that in the parade and invasion staged by Krewe, there were involved "40 to 50 floats, 18 to 20 bands, a number of horse units, drill teams, and 'special feature' units." Ye Mystic Krewe of Gasparilla v. Commissioner,80 T.C. 755, 757↩ (1983).
3. See the quoted excerpts from the Reports of the House Ways and Means Committee and the Senate Finance Committee, reproduced at footnote 8 of our prior opinion.↩
4. Sec. 512(a)(3)↩ was added to the Code by Pub. L. 91-172, sec. 121(b)(1), 83 Stat. 487, 537 and was effective on January 1, 1970.