SOUTH END ITALIAN INDEPENDENT CLUB, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 35770-84.          Filed July 22, 1986.

---

*Thomas M. Mawn, Jr.*, for the petitioner.
*C. Ellen Pilsecker*, for the respondent.

OPINION

RAUM, *Judge*: The Commissioner determined deficiencies in petitioner's income tax as follows:

| Year | Deficiency |
|------|-----------|
| 1979 | $3,604.02 |
| 1980 | 2,847.10 |
| 1981 | 999.66 |

The issue presented is whether the proceeds of petitioner's beano game operation, which were required by State law to be used for charitable, religious, or educational purposes as a condition to the retention of its beano license, and which were in fact used for such purposes, were deductible in full or only as limited by section 512(b)(10), I.R.C. 1954. The case was submitted fully stipulated.

Petitioner South End Italian Independent Club, Inc. (the South End Italian Club or South End or the club) is a social club recognized by the IRS as exempt from taxation under section 501(c)(7), I.R.C. 1954. It was incorporated under the laws of Massachusetts on April 12, 1934.

During the years at issue, petitioner was licensed under the laws of Massachusetts to operate beano (otherwise commonly known as bingo) games. Petitioner's license authorized it to conduct beano games on Thursday nights at specified hours. It did so sponsor such games on a weekly basis during the years involved herein.

Under Massachusetts law, the profits earned from the sponsoring of beano games "shall be the property of the organization conducting said game, and shall be used for charitable, religious or educational purposes, and shall not be distributed to the members of such organization." Mass. Gen. Laws Ann. ch. 10, sec. 38 (West 1980). The "Lawful Purposes" for which these profits or "Net Proceeds" can by law be expended are more fully set out by certain State regulations, namely, those established by the Massachusetts

State Lottery Commission pursuant to statutory authority and identified as "Beano Regulations" in title 961 of the Code of Massachusetts Regulations (961 Code Mass. Regs.). Those regulations classify the appropriate charitable, religious, and educational uses of beano proceeds into three categories of uses: "Those which benefit needy or deserving persons, * * * foster worthy public works", and "lessen the burdens of government". 961 Code Mass. Regs. sec. 3.02(7)(a)-(c). Within these categories further description, as well as examples, of the appropriate uses of beano proceeds is provided. The "Net Proceeds" of a beano game are defined in the regulations as "Gross Receipts less taxes, prizes and reasonable and necessary expenses ordinarily incidental to the conduct of Beano games." 961 Code Mass. Regs. sec. 3.02(11). Petitioner's license to operate beano games "may be revoked at the discretion of the director [of the State lottery]" or "upon written request to the director by the city or town approving authority". Mass. Gen. Laws ch. 10, sec. 38. The "Grounds for Revocation or Suspension" of a beano license are listed at 961 Code Mass. Regs. sec. 3.03(6) as including the following:

1. Violation of any provision of the Beano Law, regardless of whether any criminal charges are brought or conviction results;

2. Violation of these Rules and Regulations or any other directives of the Director;

3. The request of the Local Licensing Authority;

4. The public interest.

On its Exempt Organization Business Income Tax Returns (Forms 990-T) for 1979, 1980, and 1981,[1] petitioner reported its income from beano as "Unrelated Business Taxable Income." The amount received from sponsoring beano games was divided and reported as two separate items of income. First, petitioner reported as "Rent Income" an amount it apportioned to rental of the club's "hall" and "quarters" used in the conduct of the beano games. Such rent income amounted to $7,950 in 1979, $11,675 in 1980, and $12,200 in 1981. Second, it reported

---

[1] It is stipulated by the parties that these "returns were filed during the course of the examination of petitioner's tax liability for the years at issue". They were dated Apr. 25 and 26, 1982. The Commissioner, however, does not seek additions to tax as a result of these late filings.

another amount designated as "Other income", which was stipulated to represent the gross income from beano less prizes, expenses directly attributable to the games, taxes paid to the Massachusetts State Lottery Commission,[2] and the rent "paid" to petitioner noted above. That "Other income" amounted to $24,856 in 1979, $18,072.75 in 1980, and $6,740.75 in 1981.

Contributions out of the beano proceeds, as required by Massachusetts law, were reported as made in the amounts of $22,301.02 in 1979, $18,072.75 in 1980, and $6,740.75 in 1981.[3] In 1979 and 1980, contributions were listed as made to some 42 donees; in 1981 they were listed as made to 27 donees. The recipients of the funds included the local public high school, fire department, and police association as well as local churches, medical research groups, and organizations benefiting children, senior citizens, the handicapped, the hungry, and victims of disaster.

The Commissioner, in his notice of deficiency, reduced petitioner's charitable contributions for 1979, 1980, and 1981 to $1,482.13, $1,325.56, and $860.39, respectively, "to comply with the statutory provisions of Section 512(b)(10)" which section (as in effect for those years)[4] limits the charitable deduction allowed by section 170 to "5 percent of the [petitioner's] unrelated business taxable income" computed without the benefit of charitable deductions. We hold for petitioner.

---

[2]The applicable Massachusetts regulations provide that gross receipts from beano are reduced by "taxes" to determine the "Net Proceeds" which must be used for the listed purposes, but they do not specify whether the taxes referred to include Federal taxes. While it is unclear to us, petitioner seems to think that the Government challenges its deduction of only those taxes paid to the Massachusetts State Lottery Commission in computing net proceeds. We conclude that South End correctly computed its beano "Net Proceeds" under Massachusetts law. Consequently, for Federal tax purposes we treat the Massachusetts regulations as requiring charitable, religious, or educational use of before (income) tax beano proceeds. Our conclusion on this matter is supported, at least to some extent, by the structure of the Massachusetts statute involved. After requiring in sec. 38 that the profits of beano be used for specific listed purposes, the statute provides in sec. 39 for a tax to be paid to the State Lottery Commission—a tax which is clearly to be deducted from gross receipts to arrive at a profit figure—without any indication that State or Federal income taxes are to receive similar treatment.

[3]In the returns for 1980 and 1981, the amounts reported as "Other income" from beano were precisely equal to the amounts claimed as contributions. However, the 1979 contributions deduction was less than the amount of the "Other income" reported for that year. There was no explanation for the difference.

[4]This provision has since been amended to provide for a 10-percent limitation. Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2374.

As a social club qualifying for tax exempt status under section 501(c)(7), I.R.C. 1954, the South End Italian Club is taxable on its "unrelated business taxable income" under section 512(a)(3), I.R.C. 1954—a special code provision applicable, for the years at issue, to "organizations described in section 501(c)(7) or (9)." While most tax exempt organizations are taxed on "unrelated business taxable income" as defined in section 512(a)(1), I.R.C. 1954, social clubs, such as petitioner, are taxed on "unrelated business taxable income" as that term is defined in section 512(a)(3), I.R.C. 1954. The tax ramifications of the application of these different definitions are significant.

The definition in section 512(a)(1) results in taxation of exempt organizations on income only if that income is generated by a trade or business that is regularly carried on and that is not substantially related to the organization's tax exempt purposes. *United States v. American Bar Endowment*, 477 U.S. ____, ____ (1986); *Iowa State University of Science and Technology v. United States*, 205 Ct. Cl. 339, 351-352, 500 F.2d 508, 516-517 (1974); *Waco Lodge No. 166 v. Commissioner*, T.C. Memo. 1981-546, 42 T.C.M. 1202, 1204, 50 P-H Memo T.C. par. 81,546. Sec. 1.513-1(a), Income Tax Regs. By contrast, section 501(c)(7) organizations are taxed on "unrelated business taxable income" as defined in section 512(a)(3) to mean all income that is not "exempt function income."[5] Sec. 512(a)(3)(A), I.R.C. 1954. "Exempt function income" is then defined in section 512(a)(3)(B) as follows:

(B) EXEMPT FUNCTION INCOME.—For purposes of subparagraph (a), the term "exempt function income" means the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid. Such term also means all income (other than an amount equal to the gross income derived from any unrelated trade or business regularly carried on by such organization computed as if the organization were subject to paragraph (1)), which is set aside—

(i) for a purpose specified in section 170(c)(4) * * *

---

[5]Because a social club's "unrelated business taxable income" is not defined in terms of income generated from an "unrelated trade or business", sec. 513(f), which excludes "any trade or business which consists of conducting bingo games" from classification as an "unrelated trade or business", has no application here.

A social club is thus taxed on all income other than that received from members in exchange for goods and services and other than a limited amount that is set aside for "religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals"—the purposes specified in section 170(c)(4).[6] Thus, to be taxable, the income of a social club need not be generated by a "trade or business". The use of the term "unrelated business taxable income" to describe a social club's income that is subject to tax is something of a misnomer which is used nonetheless, presumably because it functions conveniently (although confusingly) to plug social clubs into the preexisting scheme for taxation of exempt organizations.

This distinct tax treatment of social clubs stems from revisions to section 512(a) made by section 121 of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 537. Such revisions were made in order to extend the unrelated business income tax which applied to some tax exempt organizations (such as educational, charitable, and religious organizations) to those organizations, such as social clubs, which were previously entirely exempt from tax, since the previously untaxed organizations were "equally apt to engage in unrelated business." H. Rept. 91-413, at 47 (1969), 1969-3 C.B. 230. By introducing the "exempt function income" concept the statute was intended to go even further, taxing the "investment income of organizations which are exempt on the grounds of mutuality or common membership." H. Rept. 91-413, at 47. Congress' rationale for so extending the taxation of social clubs was rooted in the fact that their tax exemption was originally "designed

---

[6]Petitioner makes no argument that a portion of the beano receipts is exempt as charges for services provided to members. Further, no argument is made that the beano proceeds and related donations qualify as "exempt function income" under the provision of sec. 512(a)(3)(B)(i) allowing for a "set aside" of income to be used for charitable purposes. Instead, both parties agree that the club's income from beano is taxable. The basis for their agreement on this issue is their position that the club's beano operation is a "trade or business"—a rather curious basis for a conclusion on taxability of income given the absence of a "trade or business" requirement in the provisions for taxation of social clubs. Petitioner seems to take this position in order to support its contention that the donations are deductible, not under sec. 170, but under sec. 162 as ordinary and necessary expenses incurred in the conduct of a "trade or business". In taking this position, petitioner overlooks our holding in The Brook, Inc. v. Commissioner, T.C. Memo. 1985-614, 51 T.C.M. 133, 54 P-H Memo T.C. par. 85,614, that connection with such a trade or business is *not* a condition of deductibility of expenses under sec. 162 when taxation of a social club is at issue.

to allow individuals to join together to provide recreational or social facilities on a mutual basis, without tax consequences." H. Rept. 91-413, at 48. S. Rept. 91-552, at 71 (1969), 1969-3 C.B. 469-470. Accordingly, it was reasoned, "the tax exemption operates properly only when the sources of income of the organization are limited to receipts from the membership * * * [W]here the organization receives income from sources outside the membership * * * upon which no tax is paid, the membership receives a benefit not contemplated by the exemption." H. Rept. 91-413, at 48; S. Rept. 91-552, at 71.

When social clubs were thus brought into the existing scheme for taxation of exempt organizations, they were made subject to some of that scheme's provisions for deduction of related expenses. A social club's "unrelated business taxable income" is reduced by "the deductions allowed by this chapter which are directly connected with the production of the gross income * * * both computed with the modifications provided in paragraphs (6), (10), (11), and (12) of subsection (b)." Sec. 512(a)(3)(A), I.R.C. 1954. Those deductions provided for in chapter 1 are to be allowed against "an activity [of a social club] generating income subject to tax" without regard to whether that activity is "an unrelated trade or business regularly carried on". (Emphasis in original deleted.) 3 U.S. Treasury Dept., Tax Reform Studies and Proposals 325 (Comm. Print of House Ways and Means Comm. and Senate Finance Comm. 1969). See *Cleveland Athletic Club, Inc. v. United States*, 779 F.2d 1160 (6th Cir. 1985); *Ye Mystic Krewe of Gasparilla v. Commissioner*, 80 T.C. 755 (1983); *The Brook, Inc. v. Commissioner*, T.C. Memo. 1985-462, 50 T.C.M. 959, 962 n. 4, 54 P-H Memo. T.C. par. 85,462, at 85-2065, Supplemental Opinion T.C. Memo. 1985-614, 51 T.C.M. 133, 135, 54 P-H Memo T.C. par. 85,614, at 85-2744. This Court has held that a social club can take deductions allowed by section 162 against any taxable income, whether or not generated by a trade or business and, in so holding, has specifically rejected as "both unreasonable and unwarranted" the Government's contrary construction of section 512(a)(3)(A). *The*

*Brook, Inc. v. Commissioner*, 51 T.C.M. at 135, 54 P-H Memo T.C. at 85-2743.[7]

At issue in this case is the deductibility, from beano income, of those proceeds of such income which were donated pursuant to the requirements of Massachusetts law. The specific question is whether the payments made are properly deductible under the general rule in section 512(a)(3)(A) concerning "the deductions allowed by [chapter 1]" or under a modified rule contained in section 512(b)(10) concerning "deduction[s] allowed by section 170". If the payments qualify under the former provision, they are fully deductible; if they come within the latter, their deductibility is limited to "5 percent of the [petitioner's] unrelated business taxable income." Sec. 512(b)(10), I.R.C. 1954.

Petitioner argues on brief that the donations required by Massachusetts law to be made out of beano receipts are "expenses deductible as ordinary and necessary business expenses under Section 162". In order to be deductible as a business expense under section 162—and thereby *fully* deductible under section 512(a)(3)(A)—the donations must first fail to qualify as "contributions or gifts to organizations described in section 170". Sec. 1.162-15(a)(2), Income Tax Regs. See *Marquis v. Commissioner*, 49 T.C. 695, 699-700 (1968); *Stover Co. v. Commissioner*, 27 T.C. 434, 442 (1956); *Lysek v. Commissioner*, T.C. Memo. 1975-293, 34 T.C.M. 1267, 1275, 44 P-H Memo T.C. par. 75,293, at 75-1247; *Jefferson Mills, Inc. v. United States*, 259 F. Supp. 305, 311-312 (N.D. Ga. 1965), affd. per curiam 367 F.2d 392 (5th Cir. 1966); Rev. Rul. 63-73, 1963-1 C.B. 35. They must also prove to be eligible for deduction under section 162, I.R.C. 1954. We are convinced that petitioner's payments satisfy both of the above requirements and are thereby entitled to treatment as business expenses which are fully deductible under section 512(a)(3)(A).

---

[7] In *The Brook, Inc. v. Commissioner*, 51 T.C.M. at 135, 54 P-H Memo T.C. par. 85,614, at 85-2744, it was stated:

"we think that a reasonable reading of section 512(a)(3)(A) is that Congress, having decreed that a social club's income from all sources (other than member sources) was to be treated as *business* income, then intended that the deductions allowed by chapter 1 with respect to *business* income should be allowable as deductions against the income produced by each unrelated activity, whether in fact such activity constituted the carrying on of a business or not." [Emphasis in original.]

First, petitioner's payments were made in compliance with a Massachusetts law requiring the donation of the "Net Proceeds" of petitioner's beano games. Given the legal compulsion surrounding petitioner's making of the donations, they can hardly qualify as voluntary charitable contributions. See *Allen v. United States*, 541 F.2d 786 (9th Cir. 1976); *Perlmutter v. Commmissioner*, 45 T.C. 311 (1965); *Lombardo v. Commissioner*, T.C. Memo. 1985-552, 50 T.C.M. 1374, 54 P-H Memo T.C. par. 85,552. Cf. *Commissioner v. Duberstein*, 363 U.S. 278, 285 (1960); *United States v. Transamerica Corp.*, 392 F.2d 522, 524 (9th Cir. 1968).

Further, the club's beano license could be revoked if petitioner were to violate the donation requirement of the Massachusetts Beano Law. Accordingly, obtaining the assurance that its license would not be revoked for failure to comply with that requirement was itself a quid pro quo for the donations. The consequence of holding the license was that petitioner could provide its members with the opportunity to play beano. Moreover, it was the beano license that allowed the club to earn gross rentals ranging from $7,950 to $12,200 in the years at issue. It has long been established that the receipt of such benefits will disqualify a donation from classification as a charitable contribution. See *Oppewal v. Commissioner*, 468 F.2d 1000, 1002 (1st Cir. 1972); *Crosby Valve & Gage Co. v. Commissioner*, 380 F.2d 146, 147 (1st Cir. 1967), affg. 46 T.C. 641 (1966); *Murphy v. Commissioner*, 54 T.C. 249, 253 (1970); *Channing v. United States*, 4 F. Supp. 33, 34 (D. Mass. 1933). Petitioner's payments are so disqualified here.[8]

In addition to failing to meet the requirements for deductibility as charitable contributions, the donations must qualify under a code provision in chapter 1 to be fully deductible under section 512(a)(3). Here, deductibility is sought under section 162, I.R.C. 1954. We agree with petitioner's contention that the payments were ordinary and necessary expenses under section 162 which were "directly

---

[8]Also, the range of eligible recipients under the Massachusetts regulations include some classes of donees that probably would not have qualified some donations as deductible under sec. 170 (e.g., to fraternal organizations), but that could properly have been classified as "ordinary and necessary" expenses in view of the requirements of Massachusetts law.

connected with the production of the gross income" from beano operations under section 512(a)(3).

The donations were both ordinary and necessary expenses. They were clearly necessary, in the strict sense of the word, to the lawful conduct of beano games by petitioner since they were required by Massachusetts law as a condition to the retention of its license to operate such games. See *Welch v. Helvering*, 290 U.S. 111 (1933). Further, the donations were currently deductible ordinary expenses in the nature of an annually recurring licensing expense. See *Nachman v. Commissioner*, 12 T.C. 1204, 1208, 1212 (1949), affd. 191 F.2d 934 (5th Cir. 1951); *Haman v. Commissioner*, T.C. Memo. 1972-118, 31 T.C.M 466, 41 P-H Memo T.C. par. 72,118. Rev. Rul. 77-124, 1977-1 C.B. 39. Compare *P. Liedtka Trucking Co. v. Commissioner*, 63 T.C. 547, 555 (1975); *Toledo T.V. Cable Co. v. Commissioner*, 55 T.C. 1107, (1971), affd. per curiam 483 F.2d 1398 (9th Cir. 1973); *Ryman v. Commissioner*, 51 T.C. 799, 801-803 (1969); *Tube Bar, Inc. v. Commissioner*, 15 T.C. 922, 929-930 (1950). Since the yearly cost (in contributions) to petitioner of maintaining its license is an ordinary and necessary expense, the donations required to be made by Massachusetts law are properly fully deductible from South End's beano income.

This result is fully consistent with Congress' purposes in imposing a tax on the income of social clubs. To the extent that the South End Italian Club's beano income would be available to reduce "the members' costs below the actual cost of providing the personal facilities made available by the organization" such income is taxed. H. Rept. 91-413, at 47 (1969), 1969-3 C.B. 231. The portion of South End's beano income that is required to be donated is not available to benefit the membership, is properly characterized as an expense under section 162 (rather than as a charitable contribution under section 170), and is fully deductible from petitioner's unrelated business taxable income under section 512(a)(3)(A).

*Decision will be entered for the petitioner.*